(No. 44233.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. NATHAN WRIGHT, Appellant.

*Opinion filed March 29, 1974.*

524

William J. Martin, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, Kenneth L. Gillis and John M. Cutrone, Assistant State's Attorneys, and Lois Feinberg (Graduate Law Student), of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendant, Nathan Wright, was convicted on charges of conspiracy, attempted armed robbery of a Thillens check-cashing truck, and murder, in the circuit court of Cook County, by a jury which had been qualified to impose the death penalty. He was sentenced to 75 to 150 years in the penitentiary for murder, and a concurrent sentence of 5 to 10 years for attempted armed robbery. This is a direct appeal from the circuit court of Cook County.

On January 24, 1969, an attempted armed robbery of the Thillens truck took place at the Bell & Howell plant in Lincolnwood, Illinois. That attempt resulted in a gunfight between the police and 3 persons in a 1968 Buick.

In the course of the gunfight, 2 persons in the Buick were killed, the third was taken into custody, a police officer was mortally wounded and died 10 months later. The surviving suspect, James Allen, made statements to the police incriminating the defendant. Allen was granted a severance, and prior to Officer Singleton's death, he was tried before a jury and found guilty of aggravated battery.

The case against the defendant is based upon the theory of accountability. It is alleged by the People that the defendant was the driving force of the conspiracy, indeed, the mind behind the entire operation. The defendant does not challenge the allegation that the conspiracy existed; that some of the conspirators went to the Bell & Howell plant on January 24, 1969, in an attempt to carry out the conspiracy; or that as a result of this attempt,

Detective Singleton was shot in the neck and died from this gunshot wound 10 months later. He argues only that there is insufficient evidence to connect him with the conspiracy and thus make him liable for the acts of the conspirators.

At the trial, the People produced testimony of a series of events beginning sometime early in the summer of 1968. The defendant had worked in the plant, and was familiar with the basic services provided by the Thillens check-cashing service. The service provided is that on payday the Thillens company sends an armored car to the plant which carries large amounts of cash for the purpose of cashing payroll checks.

The conspiracy was made up of a changing cast of persons as the months went by.

Joe Brown testified that he was one of the original conspirators, and that the defendant was the person who suggested and planned the robbery. Brown could not take part in the January 24, 1969, attempt because he was in custody on another charge at the time, but he claimed to have withdrawn from the conspiracy prior to his arrest because the risk was too great. His testimony set forth in detail the planning and initial abortive attempts to commit the robbery.

Brown, when first arrested for an unrelated armed robbery, denied participation in it, but told the police that the guns used in that robbery could be found in the defendant's apartment. The arrest of Brown and the search of the defendant's apartment took place on December 19, 1968. The police seized a .30-caliber rifle and a sawed-off shotgun.

On January 13, 1969, two days before he was to go on trial on the other charge, Brown informed the police of the Thillens robbery plans, and the police began surveillance at the Bell & Howell plant on January 17, 1969. Two officers identified Nathan Wright and Tyrone Oby as being present at the plant that night in a stolen Buick. The

Thillens truck arrived late that night and the police made no attempt to arrest the defendant and Oby, who drove out of the parking lot when the truck failed to arrive. On January 24, 1969, the Buick returned to the Bell & Howell parking lot and parked. When the Thillens truck did not arrive, the Buick started to leave. The police attempted to halt the vehicle, but the only response from inside it was gunfire.

The defendant raises several allegations of error. He first urges that the warrantless search of his apartment in December, 1968, and the seizure of the weapons therefrom violated his rights under the fourth and fourteenth amendments. The weapons were introduced into evidence to connect the defendant to the crime.

The following facts were testified to at the hearing on the motion to suppress this evidence. Officer Spangelo testified that on December 18, 1968, he received information connecting Brown with an armed robbery of a milk-truck driver. The driver identified Brown from a photograph. The officer then arrested Brown the morning of December 19, 1968. Brown said he was not involved in the robbery but that he knew who was. Brown told the officer that the guns used in the robbery were at the defendant's apartment and "*** if you get there before noon, you have a good chance of getting them, unless somebody in the building wired him or tipped him off that I am arrested." Brown also said, "*** the rest of the crew will be there and also on the street by noon and if they are going out on the street, they take the guns with them."

The officer testified that he and several others rushed to the defendant's apartment to arrest him. He knocked on the defendant's door, the defendant admitted the officers, they noticed an empty holster on the kitchen table, and they then found the sawed-off shotgun and carbine lying on a dresser or chest.

The prosecution contends that the search and seizure were proper as being incidental to a lawful arrest. Under

section 107—2(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1969, ch. 38, par. 107—2(c)), then in effect, a peace officer was authorized to make an arrest without a warrant if he had "reasonable grounds to believe that the person is committing or has committed an offense." The applicable standards were described by this court in *People v. Wright* (1968), 41 Ill.2d 170, 173-174:

> " '***It is well established that a search without a warrant is reasonable and valid if it is incident to a lawful arrest and there is no requirement that the arrest be under the authority of an arrest warrant. (*Ker v. California*, 374 U.S. 23, 41, 83 S. Ct. 1623, 10 L. Ed. 2d 726.) In turn, the validity of an arrest without a warrant depends upon whether the officers had reasonable cause to believe that an offense had been committed and that the defendant had committed it. (*People v. Jones*, 16 Ill.2d 569, 573.) The test is not whether there is sufficient evidence to convict the arrested person, but probable cause exists for arrest where a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense. (*People v. Hightower*, 20 Ill.2d 361, 366.) In deciding the question in a particular case, courts deal with probabilities and are not disposed to be unduly technical. (*People v. Fiorito*, 19 Ill.2d 246, 256.)' *People v. Jones*, 31 Ill.2d 240, 243-4." See also *People v. Doss* (1970), 44 Ill.2d 541, 546.

As suggested in *Wright*, both the prosecution and defendant agree that "reasonable grounds" has the same substantive meaning as "probable cause." In *Brinegar v. United States* (1949), 338 U.S. 160, 175-176, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, the Supreme Court described probable cause:

> " 'The substance of all the definitions' of

probable cause 'is a reasonable ground for belief of guilt.' *** Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. [Citation.]

These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. *Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.*" (Emphasis added.)

We are satisfied that the facts and circumstances presented to the officer warrant a reasonable man in believing that the defendant had committed an offense. The officer had information connecting Brown with the offense. While Brown denied he took part, he professed to know who did take part in the armed robbery. The officer's independent information had tied Brown to the crime. The latter's information as to the others involved and the location of the weapons was reliable under the circumstances. Brown did not admit his own involvement, but the victim had already identified him as one of the armed robbers. His identification of the others was particularly significant in this setting.

The defendant contends that there was not probable cause for the arrest under the standards of *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 594, and *Aguilar v. Texas* (1964), 378 U.S. 108, 12

L. Ed. 2d 723, 84 S. Ct. 1509. We are not strictly confronted with the same question, that is, whether a warrant is properly issued on the affidavit of an officer reciting hearsay information obtained from an informant. (See *People v. Saiken* (1971), 49 Ill.2d 504.) Nor do we believe this case to be analogous to those where paid informants provide the information to the officers. Brown's identity as one of the perpetrators and his statement indicating knowledge of the others involved and the location of the weapons give credence to the information. The actions of the officers in making the arrest were reasonable and prudent.

The defendant contends that even if the arrest were lawful, the search and seizure were still proscribed by the fourth amendment as extending beyond the area from which the arrested person might obtain weapons or evidentiary items. (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.) The search in this case, however, predated the *Chimel* decision and is to be tested by pre-*Chimel* standards. (*Hill v. California* (1970), 401 U.S. 797, 28 L. Ed. 2d 484, 91 S. Ct. 1106; *Williams v. United States* (1971), 401 U.S. 646, 28 L. Ed. 2d 388, 91 S. Ct. 1148.) In *People v. Johnson* (1970), 45 Ill.2d 283, 289-290, we applied pre-*Chimel* standards, saying: "Weighed under the applicable pre-*Chimel* standards, we are of the opinion that ·the search in this case was reasonable. Defendant was arrested in his home, and there was reason to believe he had perpetrated numerous armed robberies over a period of several months. Not only was it reasonable to search the entire premises for the gun used in the commission of these offenses, but it was also reasonable to expect the fruits of the crimes to be discovered on the premises. Therefore, we conclude that the stolen goods were recovered in a reasonable search incident to a valid arrest made upon a lawful entry, and the goods were properly admitted in evidence." 45 Ill.2d at 289-90.

Tested by the pre-*Chimel* standards the search was

reasonable and was incidental to a valid arrest, and the evidence seized was properly admitted in evidence. *People v. Cole* (1973), 54 Ill.2d 401, 408.

The defendant next complains that it was error for the People to present the testimony of a police surgeon because both sides allegedly stipulated to the cause of death. This argument must fail since the record does not reflect that such a stipulation was, in fact, entered into, and, in any event, the stipulation does not bar such evidence. A plea of not guilty puts all aspects of the charge in issue, and the People may prove their case with any admissible evidence they desire, notwithstanding the defendant's willingness to stipulate to any given fact. *People v. Speck* (1968), 41 Ill.2d 177, 202; *People v. Nicholls* (1969), 42 Ill.2d 91, 99.

The defendant also argues that the prosecution's closing argument was so inflammatory as to deprive him of a fair trial. The initial test which must always be considered is whether the argument complained of is based upon relevant evidence in the record or legitimate inferences deducible therefrom. *People v. Hairston* (1970), 46 Ill.2d 348, 375; *People v. Ostrand* (1966), 35 Ill.2d 520, 531-532.

The complained-of portions of argument may be divided into three areas, the first of which is comment concerning the victim's intense suffering. This argument is really no more than an extension of the issue discussed earlier relative to the propriety of the testimony of the police surgeon, and is controlled by our discussion of it. The testimony by the police surgeon being proper, it can be argued with some legitimacy that comment concerning it by the prosecutor in closing argument is proper.

Secondly, the defendant objects to comment as to the deceased's family. The defendant argues that this comment, as that with reference to the suffering of the victim, is not relevant to the guilt or innocence of the accused, or the punishment to be inflicted, but generally serves only to

prejudice the defendant in the eyes of the jury. In general, we agree with this conception. The prosecution, in its brief, narrows the issue, and claims that the reference to the deceased's family was made only in regard to the question of punishment to be recommended.

The only reference to deceased's family was the following statement by the prosecution: "The People of the State of Illinois deserve, command and demand protection against this type of conduct, and ladies and gentlemen, the only way we can deter such conduct and stop the individual, who today, this very day is planning another Bell and Howell, is by giving this man the ultimate penalty, that is the only way we are going to stop situations where we have empty stars sent home to widows."

The foregoing reference to the deceased's family was not sufficient to constitute prejudicial error. The reference was minor and incidental. The prosecution made no attempt to dwell upon the family status. (See *People v. Hyde* (1971), 1 Ill. App. 3d 831.) We do not believe the passing reference in the closing argument caused the trial result to be different than it otherwise would have been. *People v. Ashley* (1960), 18 Ill.2d 272, 282.

Thirdly, the defendant complains about comment on what he terms as the "non-existent horribles." These statements were not supported by any direct evidence, but they were based on legitimate inferences from admissible evidence, and were not prejudicial.

The defendant also complains that a statement made by James Allen was improperly put before the jury through the testimony of Sergeant David Welch of the Chicago police force, who stated that he went to the Lincolnwood Police Station on January 24, 1973, after the shootings and " *** had a conversation with James Allen",

"Q. What if anything did you do subsequent to that conversation?

A. I contacted a detective Edward Wielosinski from the

same unit and advised him to go to the 2900 block on West Estes.

Mr. Washington: Objection.

The Court: Overruled. He may tell what he told the police.

The Witness: Answer: To look for a 1968 black over yellow Plymouth with an occupant supposedly the defendant.

Mr. Genson: Oh, objection judge.

The Court: Sustained."

The clear inference from this testimony is that James Allen made a statement to Sergeant Welch, incriminating the defendant, Nathan Wright. The defendant claims that this is reversible error on the authority of *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. However, *Bruton* is inapposite because there the statement of a co-defendant was introduced at a joint trial and there was no way for the prejudiced defendant to cross-examine the co-defendant. Here, the cases were severed, and James Allen already had been tried and sentenced for aggravated battery. There has been no showing in the record that the State in any way hindered the defendant from bringing James Allen into court for cross-examination.

This testimony also must be tested against the rule pertaining to the inadmissibility of hearsay evidence, although its existence was clearly inferred. An objection was sustained to the conclusory language, "with an occupant supposedly the defendant," and the jury was instructed to disregard it. This not being a *Bruton* situation, such an instruction was sufficient to avoid the claim of prejudicial error.

Suffice it to say that we do not find sufficient error to warrant reversal. A trial of this duration may not be free of evidentiary error. However, we do not find any error which could have resulted in a denial of real justice or in a jury verdict which could have been the result of such error. There is no basis for reversal in the evidentiary issues. "It is

not the policy of this court to reverse a judgment merely because error has been committed, unless it appears that real justice has been denied thereby or that the verdict of the jury may have resulted from such error." *People v. Cavanaugh* (1958), 13 Ill.2d 491, 492.

The defendant argues that the denial of his request for substitution of judges deprived him of a fair trial. The right of a defendant to a substitution of judges was controlled by section 114—5(a)(b)(c) of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 114—5(a)(b)(c)), which provides:

> "(a) Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of judge or any 2 judges on the ground that such judge or judges are so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another court or judge not named in the motion.
>
> (b) Within 24 hours after a motion is made for substitution of judge in a cause with multiple defendants each defendant shall have the right to move in accordance with subsection (a) of this Section for a substitution of one judge. The total number of judges named as prejudiced by all defendants shall not exceed the total number of defendants. The first motion for substitution of judge in a cause with multiple defendants shall be made within 10 days after the cause has been placed on the trial call of a judge.
>
> (c) In addition to the provisions of subsections (a) and (b) of this Section any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion."

The defendant failed to move for a change of judges within 10 days after his case was put on Judge Romiti's call only because his counsel neglected to do so. An affidavit was filed by his counsel to that effect. This aspect

of the argument is inconsequential, however, because the ground alleged as justification for the change of judges was prejudice, and a change of judges could be obtained at any time for this reason under the provisions of subsection (c). We will, therefore, discuss the issue of the alleged prejudice of the judge in the context of subsection (c). A hearing was held by Judge Romiti as to the existence of cause; none was found and the motion was denied. The defendant has not pointed out an example of actual prejudice which occurred during the trial by jury.

The defendant alleges also that it was reversible error to instruct the jury on the theory of felony murder when the indictment is phrased in language describing the intentional and knowing forms of the offense of murder. It is clear that "Conviction on a charge not made is a clear denial of due process of law." (*Gregory v. Chicago* (1969), 394 U.S. 111, 22 L. Ed. 2d 134, 89 S. Ct. 946.) However, this argument is inapplicable to the facts of this case. This specific point has been brought before this court previously. In *People v. McKee* (1968), 39 Ill.2d 265, 274, the defendant was indicted for murder on a direct theory, and was convicted on a felony-murder theory. We said there that "*** it is not essential that the indictment against an accessory describe the circumstances as they actually occurred, but it is sufficient if he is charged with the legal effect of acts performed by him." Under this test, we find the instruction complained of to be proper and the indictment sufficient to support the conviction.

The defendant argues also that the exclusion of prospective jurors opposed to the death penalty deprived him of his sixth and fourteenth amendment rights to trial by a fair and impartial jury. While it appears that this is a question which was left open by *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, and *Bumper v. North Carolina* (1968), 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788, the defendant has not presented any significant data to justify an expansion of

the *Witherspoon* holding to cover convictions as well as sentences.

The defendant's argument that the sentence imposed is excessive is not well taken. This court should not disturb a sentence unless it is greatly at variance with the purpose and spirit of the law or greatly disproportionate to the nature of the crime. *People v. Hampton* (1969), 44 Ill.2d 41; *People v. Taylor* (1965), 33 Ill.2d 417.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*