THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM R. BONDI, Defendant-Appellant.

Fifth District   No. 5—82—0248

Opinion filed December 4, 1984.

Randy E. Blue and Susan A. Diehl, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Terry M. Green, State's Attorney, of Benton (Kenneth R. Boyle, Stephen E. Norris, and Susan M. Young, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, William R. Bondi, was convicted by a jury in the circuit court of Franklin County on a charge of murder under section 9—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(1)) and was sentenced to a term of natural life imprisonment.

On appeal defendant contends: (1) that the circuit court improperly denied his motion to suppress evidence seized in a warrantless search of defendant's property, (2) that the prosecutor's comments during closing argument deprived defendant of a fair trial, and (3) that the circuit court abused its discretion in sentencing defendant to a term of natural life imprisonment.

Since defendant does not challenge the sufficiency of the evidence against him, a complete recitation of the facts adduced at trial is unnecessary; however, those facts related to the issues raised by defendant are detailed below. We first address defendant's contention that the circuit court improperly denied his motion to suppress evidence seized in a warrantless search of defendant's property.

On Monday, December 31, 1979, Genevieve Bondi was reported missing by her cousin, Dorothy Hopkins. Genevieve Bondi's body was found three days later in a shallow grave on property owned by her and her husband, the defendant, approximately 300 feet from their place of residence. A postmortem examination indicated that the cause of death was either a small caliber gunshot wound to the left side of the head penetrating into the brain, a skull fracture at the left forehead, or a combination of both injuries. The pathologist who conducted the examination testified that the skull fracture occurred prior to the death of the victim and that it was not the result of the bullet which inflicted the gunshot wound but that it resulted from independent causes. The record establishes that the search for Genevieve Bondi had been conducted without a warrant and without the consent of the defendant, who, by the time the search was commenced, was no longer present in the State. Based on these facts, defendant requested the trial court to suppress the body of the victim and various items of personal property discovered during the search.

■ The Illinois courts have had occasion to address the issue raised by defendant's assertions in this regard and have held that no warrant is necessary when, as here, the authorities' entry into and search of the premises was for the purpose of providing aid to persons or property in need thereof. (See *People v. Clayton* (1975), 34 Ill. App. 3d 376, 339 N.E.2d 783; *People v. Brooks* (1972), 7 Ill. App. 3d 767, 289 N.E.2d 207.) Evidence of crime discovered during such an entry may be legally seized without a warrant. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022; *People v. Clayton* (1975), 34 Ill. App. 3d 376, 379, 339 N.E.2d 783, 785; *People v. Brooks* (1972), 7 Ill. App. 3d 767, 777, 289 N.E.2d 207, 214.

The fourth amendment to the United States Constitution (U.S. Const., amend. IV) proscribes all unreasonable searches and seizures. " '[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " (*Mincey v. Arizona* (1978), 437 U.S. 385, 390, 57 L. Ed. 2d 290, 298-99, 98 S. Ct. 2408, 2412, quoting *Katz v. United States* (1967), 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514.) The issue raised by defendant's appeal involves one such exception.

■ ■ Entry and search of premises for the purpose of providing aid to persons or property in need thereof is permitted without a warrant under the so-called "emergency" doctrine. (*Mincey v. Arizona* (1978), 437 U.S. 385, 390, 57 L. Ed. 2d 290, 298-99, 98 S. Ct. 2408, 2412; *People v. Free* (1983), 94 Ill. 2d 378, 395-96, 447 N.E.2d 218, 226.) The basic elements of this exception to the warrant requirement under the fourth amendment have been summarized in the following manner:

> "(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
>
> (2) The search must not be primarily motivated by intent to arrest and seize evidence.
>
> (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." (2 W. LaFave, Search & Seizure sec. 6.6(a), at 469 (1978).)

Applying these guidelines to the case at bar, we conclude: (1) that the fact that Genevieve Bondi was reported missing gave the authorities reasonable grounds to believe that she might be in imminent danger

of death or serious bodily harm, (2) that as such the primary intent of the search of the premises was to locate her and provide assistance to her, not to seize evidence against the defendant, and (3) that her residence and the property surrounding it were the most likely places to search for evidence of the whereabouts of a missing occupant.

We reject defendant's contention that because the victim was dead by the time her body was discovered, no emergency existed which would justify the warrantless intrusion which resulted in the discovery. Until the body was unearthed and identified as that of Genevieve Bondi, it was essential that the search for her continue and to continue with sufficient haste. These facts bring the instant search within the scope of the emergency doctrine. It is for this reason that the excavation of the burial site was within the permissible scope of the authorities' search for Genevieve Bondi. In the context of their search for the missing woman, the presence of the fresh diggings which marked her grave provided sufficient grounds for the authorities to investigate. This excavation is different in no substantive way from the entry and search of the premises in *People v. Brooks* (1972), 7 Ill. App. 3d 767, 289 N.E.2d 207, in which the odor of a deceased body led the authorities to enter an apartment without a warrant. We conclude, therefore, that the circuit court's denial of defendant's motion to suppress was proper.

We next address defendant's claim that he was deprived of a fair trial by various comments the prosecutor made during closing argument. Defendant urges that reversible error occurred when the prosecutor stated that defendant murdered his wife because she would not divorce him, when the prosecutor misstated the testimony of a psychologist who testified as a defense witness, and when the prosecutor impugned defendant's motive for surrendering himself to authorities by stating that defendant did so in order to be able to return and inherit his wife's property. Defendant further contends that the prosecutor made inflammatory statements to the jury to the effect that the victim had been buried alive; and finally, defendant objects to the prosecutor's characterization of defendant's trial tactics as smoke screens.

Defense counsel objected only to the prosecutor's comment concerning the defendant's wife's refusal to grant defendant a divorce. However, that comment was later ably rebutted at trial when defense counsel pointed out to the jurors that there was no evidence to support the prosecutor's statement. We can therefore conclude that the statement was not a significant factor in the jury's determination and accordingly does not warrant reversal. (See *People v. Moore* (1973), 55

Ill. 2d 570, 576-77, 304 N.E.2d 622, 625.) Any error resulting from the remaining allegedly prejudicial remarks is waived by defendant's failure to object thereto unless the comments are so inflammatory that defendant could not have received a fair trial or so flagrant as to threaten deterioration of the judicial process. (*People v. Owens* (1984), 102 Ill. 2d 88, 104, 464 N.E.2d 261, 268.) We have considered these additional comments and conclude that not only were neither of the above conditions reached, but that the comments are free of error.

■ We do not agree with defendant's assertion that the prosecutor misstated the testimony of the defense psychologist. A comparison of the prosecutor's description of the psychologist's testimony and the actual testimony reveals only insignificant difference. Any misstatement was apparently unintentional and does not require reversal. (See *People v. Hine* (1980), 88 Ill. App. 3d 671, 679-80, 410 N.E.2d 1017, 1024.) Nor do we believe that the comments of the prosecutor which implied that the defendant surrendered in order to inherit his wife's property transcend the bounds of proper argument. The purpose of the prosecutor's comments was to counter defendant's claim that he surrendered in order to exonerate himself. Although not supported by any direct evidence, the prosecutor's comments were based on legitimate inferences therefrom. (See *People v. Wright* (1974), 56 Ill. 2d 523, 531, 309 N.E.2d 537, 542; *People v. Hine* (1980), 88 Ill. App. 3d 671, 680, 410 N.E.2d 1017, 1024.) The evidence reveals that defendant had begun to withdraw funds from the couple's joint checking account prior to his wife's death and that after her death defendant withdrew the remaining funds, closed the account and shortly thereafter left the State. Furthermore, the defendant testified that he was aware that he was the sole beneficiary under his wife's will and that prior to his surrender he had begun to run low on money. The prosecutor's comments here are therefore distinguishable from those found in the cases cited to us by defendant. Unlike *People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629, where the prosecutor made an unsupported allegation that the defendant had committed another crime while having reason to know that no such crime had been committed, here the prosecutor's comments drew into question defendant's stated reason for his surrender and were supported by evidence in the record. See *People v. Wright* (1974), 56 Ill. 2d 523, 531, 309 N.E.2d 537, 542; *People v. Hine* (1980), 88 Ill. App. 3d 671, 680, 410 N.E.2d 1017, 1024.

■ We also reject defendant's claim of prejudice from the prosecutor's statement that "he [defendant] took that woman out, presumably, unconscious, put her in a grave, made sure it was done, made

sure it was done right." Defendant contends that the prosecutor thus implied that the victim was buried alive. However, from the context in which such statement was made, it appears that the prosecutor's statement was made simply in an effort to refute defendant's claim that his wife's death was the result of an accidental shooting by pointing out to the jury that defendant's immediate efforts toward concealment of his wife's body were not those a person would typically expect in a case of an accidental shooting. Moreover, the statement is supported by the evidence adduced at trial. The pathologist who conducted the postmortem examination testified that the victim's skull had been fractured prior to her death. In an apparent attempt to explain that injury, the defendant had testified that the fracture must have occurred when he fell while carrying the body of his wife out to be buried. Thus, defendant's own statements raise the possibility that the victim was still alive when he took her out to bury her. We conclude, therefore, that the prosecutor's remark regarding the burial of the victim was not grounds for reversal. See *People v. Wright* (1974), 56 Ill. 2d 523, 531, 309 N.E.2d 537, 542; *People v. Hine* (1980), 88 Ill. App. 3d 671, 680, 410 N.E.2d 1017, 1024.

Finally, comments similar to those made by the prosecutor here regarding the standard of proof beyond a reasonable doubt and defense counsel's attempts to erect a smoke screen have been held to be within the bounds of proper argument. *People v. Robinson* (1984), 125 Ill. App. 3d 1077, 1081, 467 N.E.2d 291, 294; *People v. Griggs* (1977), 51 Ill. App. 3d 224, 226, 366 N.E.2d 581, 583.

Defendant's final contention is that the circuit court abused its discretion in sentencing defendant to a term of natural life imprisonment. Defendant claims that the circuit court's sentence was based on unreliable information, failed to consider certain mitigating factors, and failed properly to assess defendant's rehabilitative potential.

The trial judge set forth on the record his reasons for imposing the natural life sentence, stating in part:

"I have, however, considered the mitigating factors listed in other portions of the statutes in the hope that there would be some mitigating factor that would be applicable to this case. The only significant mitigating factor in this case is the defendant's lack of any prior criminal history, and I am giving that due consideration; however, all of the facts of the case provide a more than minimum amount in aggravation.

The death of Genevieve Bondi was caused by this defendant by some combination of means, which there is a very heavy indication that either of two separate means might have been

sufficient, and there is the possibility that she was buried while still alive. The record in this case indicates that this may well have been part of a pre-meditated course of cleaning out of marital assets.

There does not appear to be the traditional significant amount of remorse or other recognizable indication of extraordinary rehabilitation potential, and I find that the conduct in this case does show brutal and heinous behavior indicative of wanton cruelty."

■ Rather than being nonstatutory aggravating factors, as defendant claims, the above-cited observations regarding the victim's death and burial and the defendant's appropriation of marital assets represent the basis of the circuit court's finding of wantonness upon which defendant's natural life sentence is predicated. The circuit court's observations are supported by evidence in the record, and that evidence in turn supports the finding of wanton cruelty. We believe that mention of the victim's being buried alive was not made so much to demonstrate the brutality of defendant's conduct as it was to demonstrate that defendant showed little concern for the gravity of his actions. (See *People v. Winston* (1982), 106 Ill. App. 3d 673, 688, 435 N.E.2d 1327, 1338.) So viewed, its inclusion in the trial judge's remarks may well have been to support his later stated conclusion regarding defendant's lack of remorse at the death of his wife. In this context, defendant's lack of remorse is a proper factor upon which to base a sentence. *People v. Carter* (1980), 85 Ill. App. 3d 818, 828, 407 N.E.2d 584, 592.

■ We likewise reject defendant's claim that the circuit court failed to consider certain mitigating factors. Although the trial judge did not recite all the mitigating factors he considered, evidence relating to mitigation and rehabilitative potential was in the record, and the trial judge's statement of reasons indicates that he considered that evidence. A trial judge is not required to state the evidence he considered or the weight accorded each factor in determining sentence. *People v. Meeks* (1980), 81 Ill. 2d 524, 534, 411 N.E.2d 9, 14.

■ Last, while the circuit court's use of the word "extraordinary" in the context of assessing defendant's rehabilitative potential may have been ill-advised, we find nothing which would indicate that defendant's rehabilitative potential was disregarded or that it was sufficient to cause a natural life sentence to be an abuse of discretion. Although there have been instances in which defendants received lesser sentences where the balance of aggravating and mitigating factors appear to be less favorable therein than here, such a showing by

itself does not indicate an abuse of discretion. (*People v. Bartik* (1981), 94 Ill. App. 3d 696, 701, 418 N.E.2d 1108, 1113.) We conclude, therefore, that the trial court did not abuse its discretion in sentencing defendant to natural life imprisonment. See *People v. La Pointe* (1982), 88 Ill. 2d 482, 431 N.E.2d 344.

For the reasons stated above, the judgment of the circuit court of Franklin County is affirmed.

Affirmed.

JONES and HARRISON, JJ., concur.