THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
STEPHEN GRIFFIN *et al.*, Defendants-Appellees.

Fifth District   No. 5—86—0325

Opinion filed July 20, 1987.

John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, and Lori J. Lanciani, of State Appellate Defender's Office, of Springfield, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Defendants, Stephen Griffin and Brian Thorp, were charged by information with unlawful possession of a controlled substance. Both defendants filed motions to suppress evidence found during a search of the home they shared. The circuit court of Jackson County granted the motions to suppress, and the State now brings this interlocutory appeal pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)). We affirm and remand.

At the hearing on defendants' motions to suppress, the State first presented the testimony of Sergeant Don Strom of the Carbondale police department. Sergeant Strom testified he was on patrol at 12:45 a.m. on February 24, 1985, when he noticed that the front door of a house at 308 East College Street was standing open by approximately one foot. Lights were on inside the home, but he could see no sign of activity. Sergeant Strom testified the house was in a high-crime area, and that he was concerned that a burglary might be in progress or

that an injured person might need assistance. He exited his vehicle and went up to the house. He saw no signs of forced entry. Sergeant Strom looked inside the front door, but did not see or hear any signs of activity. He yelled inside the house, identifying himself as a police officer, but there was no response. He then entered the house with his gun drawn and checked each room. In one of the bedrooms, he observed what appeared to him to be a controlled substance. He radioed for another officer to bring him a field-test kit, and the material tested as being cocaine. Sergeant Strom called for two officers to secure the house, and he left the scene when those two officers arrived. When he left, he pulled the front door closed "as best I could. It wouldn't lock." When Sergeant Strom returned to the scene at 2:45 a.m., defendants were at the house with the two officers who had been assigned to secure the premises. Sergeant Strom asked defendants if they were residents of the home, and defendants indicated affirmatively. Strom then informed defendants about his earlier entry into the home and his discovery of a controlled substance. He informed defendants in which bedroom the substance was found, and defendants told Sergeant Strom that room belonged to Ted Elliot, who shared the home with defendants. Sergeant Strom told defendants that nothing had been found in their rooms but that he wanted their permission to further search the home. He told them they did not have to consent to a search, but that if they did not grant permission, he would contact the State's Attorney regarding the possibility of obtaining a search warrant. Sergeant Strom also testified he told defendant Griffin that if he chose not to consent to a search, defendants could not enter the house until Sergeant Strom could contact the State's Attorney's office regarding a search warrant. He also advised defendants of their *Miranda* rights, but told them they were not under arrest. Defendants eventually signed consent forms authorizing a search of the home.

Officer Thomas Simon of the Carbondale police department testified that in the early morning hours of February 24, Sergeant Strom had assigned him and Officer Kent Williams to remain outside the residence at 308 East College to secure the house until its occupants returned. Defendants arrived at the house at approximately 2:45 a.m. The officers, both in street clothes, began talking with Griffin without identifying themselves as police officers. Officer Simon told Griffin that someone had "sent us over here." Officer Williams then asked something similar to, "You guys have anything for us?" Griffin responded, "I don't have any idea what you're talking about." When defendant Griffin walked past the officers and into the house, Officer

Simon then told defendants he and Williams were police officers and why they were there. Defendants were told they could not go into the house. After Sergeant Strom arrived, defendants were asked to consent to a search, according to Officer Simon, who testified that both defendants were read their *Miranda* rights and told they could refuse to grant permission for the search.

Officer Kent Williams substantially corroborated the testimony of Officer Simon. In addition, Williams testified that Sergeant Strom had told him and Officer Simon that when the occupants of the house returned, the officers should first attempt to persuade the occupants to sell them something and that they should allow no one to enter the house. Williams testified that he told defendants that someone had sent them and asked if "we could make a purchase." When one of the defendants asked what type of purchase, the officers then identified themselves as police. Defendants were then told they could not enter the house. Officer Williams further testified that both defendants signed consent forms authorizing a search after defendants were told police would attempt to obtain a warrant if they did not consent.

Defendant Brian Thorp testified that when he and Griffin arrived home from a party at 2:45 a.m. on February 24, 1985, two men were on the front porch. The men spoke to Griffin, but Thorp did not hear the first part of this conversation. Later he did hear the two men state they were police officers and that they had found cocaine in the house. Defendants told the officers which bedrooms were theirs, with the officers stating that the cocaine was not found in either of those two rooms. Sergeant Strom asked defendants to get into his patrol car so they could discuss the matter of searching the home. Thorp testified that after the officers read him his *Miranda* rights, he asked if he was under arrest. Sergeant Strom told him he was not, but that he had enough evidence to obtain a search warrant and that it was only a matter of time before he did so. Sergeant Strom told the defendants that if they consented to a search, it would "look better in the judge's eyes." Thorp and Griffin got out of the patrol car to discuss whether they should consent. When they got back into the car they asked if they would be allowed inside the house if they did not sign the consent forms. Sergeant Strom told them they would not be allowed entry if they did not consent. Thorp and Griffin then signed the consent forms. Thorp testified he consented because he otherwise would not be allowed into his home, because police said they could get a warrant, and because of Sergeant Strom's comment that a judge would look more favorably on him if he cooperated.

Defendant Stephen Griffin testified he and Thorp had been at a

party on the night of February 23, 1985. They returned home to find two men on their porch. These men were not in police uniforms. One of the men, identified by Griffin at the hearing as Officer Williams, told Griffin that "Don had sent him" and that he wanted to buy "some stuff." Griffin told the men to leave and began to walk into the house. Officer Simon followed him, displayed a police badge, and told Griffin that police had found cocaine in the house and that Griffin had to leave the residence. Griffin testified that police told him the cocaine had been found in the bedroom belonging to Elliot. Sergeant Strom told Griffin that he and Thorp would not be allowed to enter the house until police obtained a search warrant or defendants consented to a search. In further testimony, Griffin admitted signing the consent form authorizing the search, but testified that Sergeant Strom had told him if he cooperated, "it would look better for us in the judge's eye."

Police in fact conducted a search after gaining the consent of defendants. They recovered various items of evidence which the trial court suppressed pursuant to motions by defendants. The court found that the original entry into the home by Sergeant Strom was illegal. The court also found that the subsequent consent given by defendants had not been voluntarily given because defendants had been excluded from their home and because police informed them of the discovery of cocaine in the house, which had been discovered during the illegal entry. We believe, as the trial court did, that the legality of the second search depends on the legality of the first, and we therefore begin by addressing the initial police entry into the home.

Unreasonable searches and seizures are prohibited under the fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 6). Searches and seizures inside a home without a warrant are presumptively unreasonable absent exigent circumstances. (*United States v. Karo* (1984), 468 U.S. 705, 714-15, 82 L. Ed. 2d 530, 541, 104 S. Ct. 3296, 3303.) No warrant is necessary when police enter into and search the premises with a reasonable belief that immediate action is necessary for the purpose of providing aid to persons or property in need thereof. (*People v. Bondi* (1984), 130 Ill. App. 3d 536, 539, 474 N.E.2d 733, 735, *cert. denied* (1985), ____ U.S. ____, 88 L. Ed. 2d 91, 106 S. Ct. 111.) This court has held that there are three basic elements to this so-called emergency exception to the warrant requirement: (1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property, (2)

the search must not be primarily motivated by intent to arrest and seize evidence, and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. (130 Ill. App. 3d 536, 539, 474 N.E.2d 733, 736, citing 2 W. LaFave, Search and Seizure sec. 6.6(a), at 469 (1978).) Under this emergency exception, the reasonableness of the belief that an emergency exists is determined by the entirety of all the circumstances known to the police at the time of the entry. (*People v. Koniecki* (1985), 135 Ill. App. 3d 394, 399, 481 N.E.2d 973, 978.) Once it has been established that the entry was valid under this exception, evidence of crime discovered during such an entry may be legally seized without a warrant. *People v. Bondi* (1984), 130 Ill. App. 3d 536, 539, 474 N.E.2d 733, 735.

■ The State would have us hold that a police officer may enter a home without a warrant to investigate the possibility of a burglary or the possibility that someone inside is in need of aid when the front door of the home is open at 12:45 a.m., and the home is located in a high-crime area. We do not believe such limited circumstances justify a warrantless entry. Courts which have validated warrantless entries into homes to protect life or property have done so in cases involving much stronger grounds to support a belief that an emergency existed. (See 2 LaFave, Search and Seizure secs. 6.6(a), (b) (2d ed. 1987).) In the present case, no one had reported seeing strangers at the home, Sergeant Strom saw no signs of forced entry, and there was no indication an injured person might need assistance. We conclude Sergeant Strom did not have reasonable grounds to believe there was an immediate need for his assistance for the protection of life or property. Consequently, the initial entry and search by Sergeant Strom were illegal.

■ We turn then to whether, in light of this illegal search, defendants still could subsequently consent to a later search. A search conducted with a defendant's valid consent does not violate the fourth amendment. (*People v. Koniecki* (1985), 135 Ill. App. 3d 394, 401, 481 N.E.2d 973, 979.) Where the validity of a search rests on consent, the State has the burden of proving the consent was voluntarily given (*Florida v. Royer* (1983), 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324), and the question of voluntariness is to be determined by the totality of the circumstances. (*United States v. Mendenhall* (1980), 446 U.S. 544, 557, 64 L. Ed. 2d 497, 511, 100 S. Ct. 1870, 1879.) The voluntariness of the consent is a question of fact to be determined by the trial court, and that determination will be accepted by the reviewing court unless it is clearly unreasonable. *People*

*v. Branham* (1985), 137 Ill. App. 3d 896, 900, 484 N.E.2d 1226, 1230.

The State contends the circumstances here demonstrate that defendants' consent was voluntarily given, pointing to evidence that defendants were read their *Miranda* rights and were told they were not required to consent. We acknowledge that these are factors to be considered in determining the voluntariness of consent. However, other circumstances strongly support the trial court's finding that consent was not voluntarily given. Defendants were barred from their home at 2:45 a.m. by three police officers. While police told them they could refuse to consent, defendants were also informed that if they did not consent to a search, they could not enter the home until police took steps to obtain a warrant. Defendants were told of the discovery of cocaine in the house, that authorities had sufficient evidence to obtain a warrant, and that obtaining a warrant was only a matter of time. They were also told the court would look more favorably upon them if they cooperated.

As we have previously indicated, voluntariness of a consent depends on the totality of the circumstances. (See *People v. Koniecki* (1985), 135 Ill. App. 3d 394, 401-02, 481 N.E.2d 973, 979-80.) There is no question that the results of Sergeant Strom's initial illegal entry and search constituted the sole basis for attempting to persuade defendants to consent to a second search and for barring them from their home. Furthermore, absent Sergeant Strom's discovery of cocaine during the initial illegal search, police had no basis for obtaining a search warrant. Therefore, the threat by police that they would obtain a warrant was groundless and they could not properly employ this threat in urging defendants to consent. (See 3 W. LaFave, Search and Seizure sec. 8.2(d), at 188 (2d ed.1987).) It is evident the police exploited the prior illegal search in eliciting defendants' consent. Therefore, the trial court's determination that defendants did not voluntarily consent was not clearly unreasonable.

For the foregoing reasons, the order of the circuit court of Jackson County is affirmed and the cause remanded for further proceedings.

Affirmed and remanded.

KARNS, P.J., and KASSERMAN, J., concur.