THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOUIS PRICE, Defendant-Appellant.

First District (2nd Division)   No. 1—88—0712

Opinion filed March 21, 1990.

Allan A. Ackerman, P.C., of Chicago (Allan A. Ackerman and Peter J. O'Malley, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and David R. Butzen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Following a bench trial, the circuit court found defendant Louis Price guilty of felony possession of a controlled substance with intent to deliver in violation of section 402(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(a)(2)) and sentenced him to six years in the custody of the Illinois Department of Corrections. Defendant appeals, alleging that the court erred in denying his motion to quash arrest and to suppress physical evidence consisting of more than 30 grams of cocaine recovered during a search of defendant's carry-on luggage at O'Hare International Airport. We affirm.

At a hearing on defendant's motion to suppress on October 20, 1987, Special Agent Bob Fulkerson of the Federal Drug Enforcement Administration testified that on July 9, 1986, he received a telephone

call from Lieutenant David Hamm of the Illinois Department of Criminal Investigation (DCI). Hamm informed Fulkerson that his office had received information that a person by the name of Louis Price was believed to be in Miami, that Price would be returning to Chicago with an indeterminate amount of cocaine, that he normally travelled on Delta Airlines and that he used a credit card for purchasing airline tickets. Hamm promised to advise Fulkerson if Price's name would appear on any Delta reservations to Chicago. Later that same evening, Hamm informed Fulkerson that his agents had ascertained that Price was on board Delta flight 402 from Miami, due to arrive in Chicago at 9:15 p.m.

At 9 p.m. Fulkerson arrived at the airport, where he met Hamm and four or five other DCI officers, including Officer Crowley. Accompanying them was a narcotics-trained canine. Fulkerson and Crowley observed a male fitting defendant's physical description exit the jetway from Delta flight 402 and walk down the concourse toward the main terminal building, carrying a brown leather tote bag. Fulkerson and Crowley followed defendant closely, while the other officers remained farther behind. About halfway down the concourse, defendant looked over his shoulder in the direction of the officers, boarded an escalator to the lower level and again looked back, this time directly at Fulkerson and Crowley. At the bottom of the escalator, defendant turned left and began walking at a quickened pace towards the door.

At this time, Fulkerson and Crowley walked up to and alongside defendant and, without blocking his movement, identified themselves as police officers and asked whether they could speak with him. Defendant said "yes," stopped, and the three stepped out of the way of other pedestrians. Upon Crowley's request, defendant produced his Illinois driver's license, and in response to questions from Crowley, claimed he had arrived from Atlanta, Georgia, where he had stayed for a couple of days visiting friends. Crowley returned the driver's license and asked defendant to produce his airline ticket, which defendant said he had left on the airplane. Asked by defendant to explain what was going on, Crowley answered that the officers were conducting a drug investigation but that defendant was not under arrest.

Crowley testified further that he then asked defendant to open the brown leather tote bag, explaining that the search would be voluntary and defendant could decline. Defendant refused to give his consent unless the officers had a search warrant. Once again, Crowley informed him that he had a right not to consent.

At this time Fulkerson intervened and told defendant that the officers had reason to believe that there were drugs in the tote bag,

which they would have to detain so that the narcotics dog that was standing by could sniff it. Fulkerson explained that if the dog did not alert, the bag would be returned; but if the dog did alert, the officers would attempt to obtain a search warrant. The officer repeated that defendant was not under arrest and was free to leave. After some hesitation, defendant answered: "Go ahead and search it," and placed the bag on the floor. Crowley asked him again whether he was consenting to the search, and defendant answered "yes." Fulkerson then unzipped the bag and retrieved the contraband, which was later confirmed to be 143.4 grams of cocaine.

Defendant Price also presented his version of the airport encounter, which included the following additional or conflicting testimony. He stated that when he first exited the jetway he noticed six or seven police officers in plainclothes standing in a semicircle in the gate area. When Fulkerson and Crowley first approached him he was nearing the exit door; they showed him their badges, told him they were looking for someone and asked if he could help. Defendant replied "yes."

According to defendant, during his conversation with the two officers, Fulkerson and Crowley were about 1 to 1½ feet away, whereas the other four or five officers stood to the side, about three to four feet away. Agent Fulkerson testified in rebuttal that the other officers stood at least 50 feet away.

Defendant testified that he never gave the officers permission to search his luggage; however, he was uncertain whether in response to Fulkerson's statement that the tote bag would be subjected to a sniff test he said, "If that's what you have got to do, that's what you have got to do," or "If that's what you have got to do, go ahead and do it."

Defendant also testified that between the time Fulkerson informed him that the luggage would be detained and the time the actual search took place, another officer walked up and asked defendant for his driver's license a second time and began to copy his name and address.

Finally, defendant testified that the entire conversation with the officers until his arrest lasted 10 to 15 minutes; according to Fulkerson, the entire encounter was no longer than four or five minutes.

At the end of the hearing the circuit judge found that "[defendant's] testimony parallels Agent Fulkerson's almost right down to the crossed Ts and dotted Is" with three "glaring" exceptions: that defendant claimed he never gave consent, that the other officers were standing only about four feet away, and that he was asked to produce his license for a second time. The court resolved all three contradic-

tions in favor of Fulkerson's testimony.

At the final suppression hearing on November 12, 1987, relying on *United States v. Place* (1983), 462 U.S. 696, 77 L. Ed. 2d 100, 103 S. Ct. 2637, and *People v. Long* (1983), 99 Ill. 2d 219, 457 N.E.2d 1252, the judge found that defendant's stop was a consensual, police-citizen encounter for which the officers needed neither an articulable suspicion nor probable cause. Furthermore, the information received from Lieutenant Hamm, later corroborated by defendant's arrival at O'Hare International Airport on a specific flight from Miami, provided the officers with an articulable suspicion that the defendant was indeed carrying a controlled substance in his luggage. Based on this information, the officers were held to be justified in informing defendant that his bag would be detained briefly for a sniff test.

Defendant complains that the warrantless search of his carry-on luggage violated his rights under the fourth and fourteenth amendments to the United States Constitution and article I, section 6, of the Illinois Constitution. Because constitutional analysis requires a separate inquiry into the reasonableness of police conduct for the seizure of a person and the subsequent search of his personal belongings (see *Place*, 462 U.S. at 699 & n.1, 77 L. Ed. 2d at 116 & n.1, 103 S. Ct. at 2640 & n.1), we determine first whether the law enforcement officers properly detained defendant and second whether defendant's consent to the search was voluntary. The State does not contest that during the encounter with defendant the officers had no arrest warrant or search warrant.

Defendant attacks the constitutionality of the detention of his person and property, claiming he was detained on a conglomeration of "hunches" that did not rise to the level of an articulable suspicion sufficient to justify his seizure. According to defendant, the officers possessed insufficient facts to match him to the drug courier profile,[1] the information supplied by Lieutenant Hamm was unreliable. Defendant claims support for his position in a series of superseded appellate

---

[1]Defendant charges the State with confusing the issue of justification by injecting defendant's similarity to the drug courier profile as an alternate legal ground for stopping him and searching his luggage. Although Special Agent Fulkerson testified at the suppression hearing that defendant fit the profile of a drug smuggler with respect to points of travel, method of payment, proposed length of stay and behavior at the airport, he stated that in this case it was unnecessary to rely on the profile for the purpose of identifying defendant, because the officers had information about him from a law enforcement agency in Miami. We agree with the trial judge that the officers relied exclusively on the information from Miami in identifying defendant at the airport and that this information provided an articulable suspicion of illegal drug activity sufficient to justify executing a canine sniff test on defendant's carry-on bag.

court decisions, *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954, *People v. Kiser* (1983), 113 Ill. App. 3d 501, 447 N.E.2d 858, *People v. Steckhan* (1983), 116 Ill. App. 3d 173, 452 N.E.2d 122, and *People v. Blevins* (1983), 118 Ill. App. 3d 221, 454 N.E.2d 802, which require that an articulable suspicion must accompany every investigatory airport stop.

■ Searches and seizures must be reasonable under both the fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution. In *Florida v. Royer* (1983), 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324, however, the Supreme Court held that a purely consensual encounter between a police officer and a citizen is not a seizure demanding objective justification. Overruling *DeLisle* and the cases following it, this court adopted *Royer* in *People v. Brett* (1984), 122 Ill. App. 3d 191, 195-96, 460 N.E.2d 876, 879, in which it held that a defendant who was objectively free to leave the presence of police officers during an airport encounter had not been "seized" for fourth amendment purposes.

■ Here, without in any way blocking defendant Price's movement, the officers approached him, identified themselves as police officers and asked whether they could speak to him. Defendant agreed. Upon request, he produced his driver's license, which after a brief examination was promptly returned. The officers told defendant that he was not under arrest. When the officers asked defendant for his consent to search the bag and when they eventually detained the bag, he was under no restraint: once again the officers informed him he was not under arrest. These circumstances indicate that defendant was objectively free to leave the presence of the officers (*Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319; *People v. Lebron* (1987), 161 Ill. App. 3d 815, 515 N.E.2d 312; *People v. Brett* (1984), 122 Ill. App. 3d 191, 460 N.E.2d 876), who in no way used any force or show of authority to restrain his movement (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Long* (1983), 99 Ill. 2d 219, 457 N.E.2d 1252). Thus, the detention of defendant for the legitimate law enforcement purpose of ascertaining whether he was carrying contraband was a consensual encounter which ripened into a full-blown seizure only after the officers obtained probable cause to arrest.

Because we agree with the trial court that no fourth amendment seizure of defendant's person occurred, we need not address defendant's contention that the information on which the officers relied for the purpose of detaining him was insufficient to meet the reasonable suspicion or probable cause standards. Thus, defendant's arguments

concerning the sufficiency of the evidence identifying him with the drug courier profile and the reliability of Lieutenant Hamm's information need not be addressed at this point; however, the existence of reasonable suspicion becomes relevant in connection with the second issue, and we will examine it there.

Defendant's next contention is that the officers searched his luggage without his voluntary consent. He maintains that a coercive atmosphere vitiating consent was created because the two officers initially approached him sporting badges, the group of additional officers standing at a distance appeared to "surround" him, his questioning lasted 10 to 15 minutes, he was moved out of the flow of pedestrian traffic, a third officer requested to see his identification a second time, more than two officers effected his arrest, and he suffered public indignity by the impermissible seizure of his person in a public place. As a result of these circumstances, defendant states that he had "no choice" but to surrender his bag.

■ Whether defendant consented voluntarily to the search of his luggage depends largely on whether the police officers had a right to threaten defendant with detaining his luggage for a sniff test. If the police have actual grounds to carry out a threatened course of conduct, communicating their intent amounts to no more than informing defendant of his legal status and does not vitiate consent. (*People v. Magby* (1967), 37 Ill. 2d 197, 226 N.E.2d 33; *People v. Griffin* (1987), 158 Ill. App. 3d 46, 510 N.E.2d 1311; *People v. Turner* (1984), 122 Ill. App. 3d 81, 460 N.E.2d 797, *cert. denied* (1984), 469 U.S. 867, 83 L. Ed. 2d 141, 105 S. Ct. 210; *People v. Holliday* (1983), 115 Ill. App. 3d 141, 450 N.E.2d 355; 3 W. LaFave, Search & Seizure § 8.2(d), at 189 (2d ed. 1987).) Here, Officer Crowley informed defendant that the officers had reason to believe he was carrying illicit drugs in his bag, which would have to be detained to allow the narcotics dog to sniff it. Defendant was aware that if the dog did not alert, he could keep the bag; otherwise, the officers would attempt to get a search warrant.

■■ For fourth amendment purposes, the exposure of luggage in a public place to a narcotics-trained canine does not constitute a search. (*United States v. Place* (1983), 462 U.S. 696, 77 L. Ed. 2d 110, 103 S. Ct. 2637.) A police officer may briefly detain a traveller's luggage for investigation, including a canine sniff test, provided he has a reasonable suspicion that the luggage contains narcotics. (*Place*, 462 U.S. at 706, 77 L. Ed. 2d at 120, 103 S. Ct. at 2644.) Although the quantum of information justifying a reasonable suspicion of criminal activity must create more than a mere intuitive feeling that something may be amiss, it need not rise to the level necessary to show

probable cause. (*People v. Long* (1983), 99 Ill. 2d 219, 457 N.E.2d 1252.) In executing a search or seizure a police officer may properly rely on information obtained from other police officers, even if he is personally unaware of the underlying facts. (*People v. Poe* (1971), 48 Ill. 2d 506, 272 N.E.2d 28 (reliance on hearsay from fellow officers), *cert. denied* (1971), 404 U.S. 942, 30 L. Ed. 2d 256, 92 S. Ct. 292; *People v. Corral* (1986), 147 Ill. App. 3d 668, 498 N.E.2d 287 (reliance on investigation and observations of fellow officers); see also 2 W. La-Fave, Search & Seizure § 3.5(b), at 9 & n.37 (2d ed. 1987) (reliance on communication between law enforcement officials of different States).) A court must consider the totality of the circumstances to determine whether the police indeed had a reasonable, articulable suspicion at the time of detention. (*United States v. Sokolow* (1989), 490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581; *People v. Nelson* (1989), 188 Ill. App. 3d 619, 544 N.E.2d 1111.) Absent manifest error, a reviewing court will not disturb a trial court's determination that sufficient evidence existed to justify a seizure. *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.

In the present case, the circuit court found that the information Lieutenant Hamm had in his possession and which he shared with Special Agent Fulkerson concerning the particulars of defendant's arrival and the probability of his carrying cocaine created an articulable suspicion that defendant was engaged in criminal activity justifying a brief investigatory detention of his carry-on luggage. As Fulkerson's testimony reflects, and as we have already indicated, given this information from another department, there was no need to rely on the drug courier profile as a basis for detention. We agree with the circuit court's finding of reasonable suspicion. Accordingly, we find that by informing defendant of their intent to subject his luggage to a canine sniff test and to seek a search warrant if the test were positive, the officers merely and properly apprised him of his legal status with respect to his luggage.

The burden of proving voluntariness rests with the State. (*People v. Griffin* (1987), 158 Ill. App. 3d 46, 510 N.E.2d 1311.) In determining whether consent was voluntarily given, a court must evaluate the totality of the circumstances alleged to comprise consent. (158 Ill. App. 3d 46, 510 N.E.2d 1311.) Voluntariness is thus a question of fact for the trial court, whose determination will survive review unless clearly unreasonable. *Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319; *People v. DeMorrow* (1974), 59 Ill. 2d 352, 320 N.E.2d 1.

Defendant's complaint that the circumstances of his encounter

with the officers produced psychological pressures which coerced his consent essentially presents an inquiry into the credibility of the State's witnesses in this case. Here the trial court determined that defendant was interviewed by two plainclothes officers who identified themselves as law enforcement agents but who at no time used any force or other show of authority. Several other officers remained at a considerable distance. The court also found that once and possibly twice defendant voluntarily surrendered his license for a brief inspection, and it was promptly returned. In fact, the officers told defendant several times that he was not under arrest and was free to leave. When they asked him for permission to search his bag, he initially refused, but after being informed that if he did not consent, the bag would be detained for a sniff test, he said, "Go ahead and search it." Asked a second time whether he was consenting to the search, defendant replied, "yes."

■ Necessarily handicapped in our evaluation of a cold, inanimate record, we must defer to the trial court's decision to resolve the differences between defendant's and Special Agent Fulkerson's testimony in favor of voluntary consent. Indeed, the sum total of the facts as established in the trial court indicates that defendant was objectively free not only to refuse permission to search, but also to leave the presence of the officers. The trial judge could readily and easily perceive, and so can we, that, confronted with information that the officers would seek a search warrant if the sniff test were positive, defendant freely and rationally chose to submit to an immediate search. Absent manifest error, a reviewing court will not disturb a trial court's finding in a hearing on a motion to suppress. (*People v. Long* (1983), 99 Ill. 2d 219, 457 N.E.2d 1252.) We agree with the circuit court's conclusion that defendant voluntarily consented to a search of his bag during a consensual encounter with the police; accordingly, we affirm his conviction.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.