THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STANLEY KISER, Defendant-Appellant.

First District (1st Division)   No. 81-2188

Opinion filed March 21, 1983.

Frederick F. Cohn, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Shapiro, and Joseph L. Ponsetto, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

Following defendant's arrest for possession of cocaine, he moved to quash the search warrant and suppress the evidence. The trial court denied defendant's motions. After a bench trial, defendant was found guilty and sentenced to four years' imprisonment.

On appeal, defendant contends that (1) the police officers' initial contact with him constituted a seizure in violation of his fourth amendment right against unreasonable seizures; (2) the seizure of defendant's baggage without probable cause violated his fourth amendment rights; (3) the information obtained from the Drug Enforcement Administration computer was unreliable; and (4) the trial court improperly denied defendant an evidentiary hearing to establish that the Drug Enforcement Administration computer information was unreliable.

We reverse.

On May 6, 1980, at 3:20 p.m., Stanley Kiser (defendant) arrived on a commercial airline flight from Fort Lauderdale, Florida. Drug Enforcement Administration (DEA) agent Bob Fulkerson and Chicago police officers Thomas Kinsella and Richard Powers were in the arrival area conducting surveillance for the purpose of detecting unlawful narcotics traffic. Defendant was the fifth or sixth passenger to deplane. He had two carry-on bags with him and was dressed casually in comparison to the other passengers on the business dominated flight. He walked at a slow pace down the concourse area toward the terminal. After stopping at two separate drinking fountains, he began

walking at a somewhat faster pace to the Budget Rent-A-Car counter. After renting a car, he proceeded to the automatic exit doors.

Fulkerson and Powers walked alongside defendant as he left Budget. Defendant testified that as he reached the exit doors, a man grabbed his elbow, identified himself as a Federal agent and asked defendant if he could speak with him. At this point, Fulkerson and Powers were blocking the exit doors. All three men moved to an area adjacent to the escalators.

Defendant was asked to produce identification. He handed Fulkerson his driver's license. Defendant was then asked to produce his rental car agreement, which he did. Eventually, his license was returned. However, after Officer Kinsella joined the surveillance team, defendant was again asked to produce his license as well as additional forms of identification.

After examining defendant's license and the rental car agreement, Kinsella consulted with another agent, who had performed a computer search under the name of "Carl Kiser," the name on the credit card which defendant had used. That search indicated that a "Carl Kiser" was a drug dealer but had no information pertaining to Stanley Kiser.

Defendant was then asked to open his baggage and refused. Kinsella testified that defendant's voice was "nervous and shaky" and that he was visibly trembling during the questioning. Fulkerson informed defendant that the officer had reason to believe his baggage contained narcotics and that the bags were to be detained. Defendant's license, rental car agreement, and luggage receipt were handed to defendant and he was told he could leave.

Defendant left the airport. A customs dog was brought to the baggage area. The dog reacted positively by biting and pawing defendant's bags. A search warrant was obtained approximately five hours later. Cocaine was found in one of the bags and defendant was charged with possession of a controlled substance. Ill. Rev. Stat. 1981, ch. 56½, par. 1402.

The trial court denied defendant's motion to suppress the evidence. He was found guilty and sentenced to a term of four years.

First, we must determine whether a seizure occurred when Agent Fulkerson and Officer Powers initially approached defendant and asked to see some form of identification. Such a determination is imperative because only the objective facts, known to an officer at the *moment* of the seizure, may be considered in deciding whether the particular intrusion was justified. (*Terry v. Ohio* (1968), 392 U.S.1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.) A lesser standard

would invite intrusions upon constitutionally guaranteed rights based upon nothing more substantial than inarticulate hunches. 392 U.S. 1, 22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.

■ A seizure occurs whenever a police officer accosts an individual and restrains his freedom to walk away. (392 U.S. 1, 16, 20 L. Ed. 2d 889, 903, 88 S. Ct. 1868, 1877.) "Seizure" does not require physical restraint *per se*. If it is apparent from the circumstances that an individual is not free to ignore the officer and walk away, a seizure has occurred triggering fourth amendment protection. *United States v. Pope* (6th Cir. 1977), 561 F.2d 663, 668.

In the present case, it is apparent that the trial judge found defendant's testimony credible. The judge commented that the defendant approached the exit doors, Fulkerson and Powers asked him to stop, defendant stopped and they *brought* him to an area adjacent to the escalator. The trial court's factual finding compels a legal finding that at the moment of the initial encounter, a seizure had occurred.

Moreover, the coercive circumstances surrounding the initial encounter and subsequent questioning demonstrate that the officers' actions amounted to a seizure or investigatory stop.

Fulkerson testified that he and Officer Powers walked alongside defendant after he left Budget. Fulkerson identified himself as a Federal officer as defendant was about to step on the automatic door mat. At this point, Fulkerson testified that he was "standing in front of the door." Thus, he was blocking defendant's exit and defendant was not free to ignore his interrogator and walk away. *Terry v. Ohio* (1968), 392 U.S. 1, 33, 20 L. Ed. 2d 889, 912, 88 S. Ct. 1868, 1885-86 (Harlan, J., concurring); *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954; *United States v. Buenaventura-Ariza* (2d Cir. 1980), 615 F.2d 29.

■ Further, we find that the agent's and officers' continual questioning and repetitive actions were, in reality, stalling techniques aimed at detaining defendant until they could obtain information from which to ascertain whether defendant was engaged in criminal activity. The examination, return, and re-examination of defendant's driver's license, rental car agreement, and three forms of identification by various officers undermine the State's assertion that defendant was free to leave with his bags at any time. The encounter from its inception was an investigatory stop. *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954.

Next, we must determine whether the investigatory stop of

defendant was proper. Such a stop is proper if a law enforcement officer is able to point to specific and articulable facts which, taken together with rational inferences therefrom, reasonably warrant the intrusion of an investigatory stop. (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880; *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 299; Ill. Rev. Stat. 1981, ch. 38, par. 107−14.) The factors considered must distinguish the detained person from other travelers. (*Reid v. Georgia* (1980), 448 U.S. 438, 441, 65 L. Ed. 2d 890, 894, 100 S. Ct. 2752, 2754 (*per curiam*).) As stated above, only the facts known to the officer at the moment of the stop may be considered. *Terry; United States v. Robinson* (5th Cir. 1980), 625 F.2d 1211.

When defendant arrived at O'Hare Airport, Agent Fulkerson and Officers Thomas Kinsella and Richard Powers were present and observed defendant and other passengers as they deplaned. The same officer who made the investigatory stop in *DeLisle* was also present in this case. This court found that stop to be an arbitrary and oppressive interference with DeLisle's right to privacy. (*People v. DeLisle* (1982), 104 Ill. App. 3d 297, 300, 432 N.E.2d 954, 957.) In the instant case, Agent Fulkerson formed the suspicion that defendant was engaged in drug trafficking based on observations which are analogous to those brought out in *DeLisle*. Fulkerson based his suspicion on the following facts: (1) Kiser arrived on a flight from a "source" city; (2) Kiser was the fifth or sixth passenger to deplane; (3) Kiser was casually dressed; (4) Kiser looked around cautiously as he deplaned; (5) Kiser initially walked down the terminal concourse at a "slow pace"; (6) Kiser later "walked at a somewhat faster pace"; (7) Kiser stopped at two water fountains; and (8) Kiser looked over his shoulder "3 or 4 times."

The State urges that the conduct displayed by defendant was indicative of one engaged in narcotics trafficking. Further, it emphasizes that defendant's behavior was observed by Fulkerson, a veteran of the DEA, and therefore reasonable ground for suspicion clearly existed. We disagree.

The fact that defendant was traveling from Fort Lauderdale cannot be regarded as suspicious. In *DeLisle*, we stated that the probability that any given passenger from a source city is a drug courier is infinitesimally small. (104 Ill. App. 3d 297, 299-300; accord, *United States v. Andrews* (6th Cir. 1979), 600 F.2d 563, 566-67 (the court's experience with DEA agents' testimony made it questionable whether there exists any city in the country which a DEA agent would not characterize as a source city).) Being one of the first passengers to de-

plane provides no support from which to base a reasonable suspicion. Any first-class passenger would be among the first to deplane. Further, where a flight is overbooked, a coach passenger may be moved to the first-class section by the airlines. Clearly, this fact does not distinguish a suspect from other travelers. In light of the fact that defendant was traveling from a popular vacation State, his casual dress cannot be considered a basis for arousing reasonable suspicion. Defendant walked slowly and then rapidly. Such walking manners can be hardly characterized as bizarre behavior, especially in an airport setting where travelers anticipate a reunion with family or friends. (*DeLisle.*) The fact that defendant never looked at the baggage claim area monitor is not unusual since defendant only had carry-on baggage.

It bears noting that here, as in *DeLisle,* Officer Kinsella testified that defendant was nervous and shaking during questioning. (104 Ill. App. 3d 297, 298.) Nervousness is a common reaction in such a coercive setting. During questioning, defendant was surrounded by three officers. At no time were less than two officers present. He had been informed that he was not under arrest at the time. However, Kinsella also testified that defendant was not free to leave after the computer information was received.

These facts when objectively considered do not distinguish defendant from other travelers. Therefore, we find that the investigatory stop was improper. Agent Fulkerson did not possess a reasonable and articulable suspicion that defendant was engaged in criminal activity. Because the investigatory stop of defendant was improper, the introduction of the evidence obtained following defendant's unconstitutional seizure violated his fourth amendment rights. Defendant's motion to quash the search warrant and suppress the evidence should have been granted.

In light of our reversal, we need not address the additional issues raised in this appeal.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County.

Judgment reversed.

GOLDBERG and CAMPBELL, JJ., concur.