THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FALISHA CARTER, Defendant-Appellant.

First District (2nd Division)   No. 1—96—1556

Opinion filed May 6, 1997.

Tod M. Urban, Kimberly A. Higgins, and Crystal A. Carbellos, all of Law Offices of Tod Urban, Ltd., of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Irene McNamara, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Defendant, Falisha Carter, was charged with possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(D) (West 1994)) and controlled substance trafficking (720 ILCS 570/401.1 (West 1994)). Following a bench trial, she was convicted for possession of a controlled substance with intent to deliver and sentenced to 15 years' imprisonment. Defendant now appeals the judgment of conviction pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603).

## FACTUAL HISTORY

### A. Motion-to-Quash-and-Suppress-the-Evidence Hearing

The pertinent facts are as follows. On April 11, 1995, defendant purchased a one-way airline ticket from Los Angeles to Chicago on Southwest Airlines under the name Keisha Walker and paid in cash 23 minutes prior to departure. This information was received by Agent Donald Morrison, a Cook County sheriff's deputy assigned to the Drug Enforcement Agency (DEA) task force in Chicago from the DEA task force in Los Angeles. Agent Morrison's job was to conduct narcotic investigations at Midway International airport. Upon disembarking the Southwestern airplane at Midway, defendant proceeded to the baggage claim area. Defendant retrieved her suitcase and walked out of the airport terminal. According to defendant, as she left the terminal, a man grabbed defendant's right arm and told her that he had reason to believe that she possessed narcotics. Defendant stated that she was subsequently patted down by a female agent. She

recalled that a male agent asked for her airline ticket and a claim ticket. When asked if she had any identification on her person, she answered in the negative. The male agent then asked for the key to her suitcase to which defendant replied that she did not have one. According to defendant, the agents searched her suitcase without her consent, found a teddy bear in the suitcase and ripped it open with a knife. The agents then pulled three kilos of cocaine from the teddy bear. Furthermore, defendant stated that the agents never told her she could refuse to consent to the search, never informed defendant that she was free to leave, nor did she feel free to leave. Under cross-examination, defendant stated that she "became nervous when the agent grabbed her arm, not before."

Agent Morrison's account of the incident conflicts with defendant's testimony. Morrison stated that after he received the information from the DEA task force in Los Angeles, he set up a surveillance at the gate at which defendant was due to arrive. Morrison testified that he observed defendant go to the baggage claim area, talk to a man and a woman, retrieve her bag, present her claim stub to the security officer and exit the airport. Morrison, who was in plain clothes and unarmed, identified himself with his badge and photo identification when he approached defendant and asked if he could speak with her. She agreed. Morrison then asked defendant if she had any identification, but she did not. When twice asked if she had arrived on Southwest Airlines, defendant answered no, that she had arrived on American Trans Air (ATA). Morrison asked to see the ticket, wherein defendant pulled out two ATA tickets dated two days earlier going from Chicago to Los Angeles. Noticing a Southwest Airline flight folder protruding out of defendant's purse, Morrison inquired about it. At this time, defendant became nervous. Morrison stated that he advised her not to be nervous, that she was not under arrest and free to leave. After looking at the airline ticket, Morrison returned it to defendant. Defendant told Morrison that she had been in Los Angeles for two days to attend a funeral. When asked if the suitcase she was carrying belonged to her, defendant denied ownership of it. Later, she admitted that it was indeed hers. Defendant stated that her mother had packed the suitcase. Morrison again told defendant that she was not under arrest and was free to leave.

Morrison, in the presence of Agent Harold Small, a DEA agent who had been standing five to six feet away earlier, asked defendant if they could open her suitcase. Defendant replied "yes, if you must." Morrison stated, "it's not that I must. That's why I am asking your permission to search," to which defendant answered "go ahead, it's ok." The agents asked for the key since the suitcase was locked, but

defendant did not have one. One of the agents unlocked the suitcase, opened it and a large teddy bear popped up. Morrison testified that Agent Small felt a hard brick shaped object inside of the teddy bear and believed it to be cocaine or marijuana. Agent Stewart pulled out the bear, slit it with a knife and recovered three kilos of cocaine from inside. Morrison does not deny the fact that he did not secure a warrant or have defendant sign any written consent form. In his testimony, Morrison stated that neither he nor anyone else grabbed defendant's arm. Agent Pam Trainer patted down defendant once she was in custody. Only after the agents arrested defendant did they realize that defendant's real name was Falisha Carter, not Keisha Walker.

After a hearing, the trial court denied defendant's motion to quash arrest and suppress evidence. It found that the conversation between Morrison and defendant was consensual.

B. Trial Court Proceedings

At trial, the testimony of the witnesses and defendant was essentially the same, with some exceptions. Morrison testified that when the agents discovered the narcotics in the teddy bear, defendant gave some incredible explanations. First, defendant stated that her mom packed the suitcase. Later, defendant said that a couple of Jamaicans in Los Angeles took her children and were going to kill them if she did not do this. When the agents looked into that allegation, they discovered defendant did not have any children. Defendant again changed her story and told Morrison that she owed the Jamaicans a lot of money, and if she did not do this they would kill her. Finally, defendant told Morrison that she thought the suitcase might contain marijuana, but not cocaine. At trial, three stipulations were entered over defendant's objections: (1) Moses Boyd, a chemist for the Chicago police department, would testify as to the chain of custody of the narcotics and that the 3003.5 grams of cocaine had a purity level of 76%; (2) Officer Edward Feliciano, an expert as to the street value of cocaine during April of 1995, would testify that 3003.5 grams of cocaine with a 76% purity level had a street value of approximately $85,000 to $1,200,000 and would not be an amount possessed by an individual for personal use; and (3) the Southwest Airline keeper of records would testify that a lady named Beverly reserved a flight to Chicago for Keisha Walker and that a woman paid for the one-way ticket in cash 23 minutes prior to departure.

At the close of the evidence, defendant moved for a judgment of acquittal, which the trial court denied. The trial court held that defendant was guilty of possession of a controlled substance with intent

to deliver (count I), but not guilty on controlled substance trafficking (count II). At the sentencing hearing, defendant was sentenced to 15 years' imprisonment.

## ISSUES PRESENTED FOR REVIEW

On appeal, defendant argues that the trial court erred in denying defendant's motion to quash arrest and suppress evidence as well as denying defendant's motion for a judgment of acquittal. Specifically, defendant submits that she was illegally searched and seized by the agents.

## ANALYSIS

■ For purposes of motions to suppress, the circuit court is in the best position to determine the credibility of witnesses, to weigh testimony, and to resolve conflicts in testimony because it has heard the testimony and observed the demeanor of the witnesses. *People v. Frazier*, 248 Ill. App. 3d 6, 12-13, 617 N.E.2d 826 (1993). In cases in which a motion to suppress turns on the weight and credibility of the evidence, the circuit court's ruling on a motion to suppress will not be disturbed unless it is manifestly erroneous. *People v. Kozlowski*, 278 Ill. App. 3d 40, 44, 662 N.E.2d 630 (1996); see also *People v. Dilworth*, 169 Ill. 2d 195, 201, 661 N.E.2d 310 (1996). The trial court's findings of fact should be accepted unless they are against the manifest weight of the evidence. *People v. Turnage*, 162 Ill. 2d 299, 642 N.E.2d 1235 (1994). A reviewing court's task is simply to ensure the trial court had a substantial basis for concluding probable cause existed. *People v. Adams*, 131 Ill. 2d 387, 400, 546 N.E.2d 561 (1989).

Defendant first contends that she was illegally detained by the officers at Midway airport, and the contents of her baggage were improperly seized in violation of the fourth amendment to the United States Constitution, since she did not consent. Specifically, defendant claims that the questioning constituted an investigatory stop wherein a reasonable and articulable suspicion was required.

■ The fourth amendment of the United States Constitution, as well as article I, section 6, of the Illinois Constitution, guarantees the right of persons to be secure from unreasonable searches and seizures of their persons and belongings. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. A person is seized only when, by means of physical force or a show of authority, his freedom of movement is restrained. *People v. Hicks*, 183 Ill. App. 3d 636, 643, 539 N.E.2d 756 (1989), citing *People v. Forrest*, 172 Ill. App. 3d 385, 526 N.E.2d 616 (1988). The United States Supreme Court concluded in *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980):

"[A] person *** [is] 'seized' within the meaning of the Fourth

Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. ***

*** The respondent was not seized simply by reason of the fact that the agents approached her, asked her if she would show them her ticket and identification, and posed to her a few questions. Nor was it enough to establish a seizure that the person asking the questions was a law enforcement official." *Mendenhall*, 446 U.S. at 554-55, 64 L. Ed. 2d at 509-10, 100 S. Ct. at 1877.

See also *People v. Murray*, 137 Ill. 2d 382, 389, 560 N.E.2d 309 (1990). In executing a search or seizure, a police officer may properly rely on information obtained from other police officers, even if he is personally unaware of the underlying facts. *People v. Price*, 195 Ill. App. 3d 701, 709, 552 N.E.2d 1200 (1990); see 2 W. LaFave, Search & Seizure § 3.5(b), at 9 & n.37 (2d ed. 1987) (reliance on communication between law enforcement officials of different states). The defendant has the burden of proving that the search and seizure were unlawful. *People v. Martin*, 121 Ill. App. 3d 196, 205, 459 N.E.2d 279 (1984).

Defendant relies on *People v. Kiser*, 113 Ill. App. 3d 501, 447 N.E.2d 858 (1983), to support her contention that defendant's initial encounter with police was a seizure. However, *Kiser* and this case are distinguishable. In *Kiser*, the trial court convicted the defendant for the possession of cocaine, and defendant appealed. *Kiser*, 113 Ill. App. 3d at 502. The appellate court in *Kiser* found that the defendant was not free to leave, since one of the agents had blocked the defendant's path by the exit door. *Kiser*, 113 Ill. App. 3d at 504. In addition, when the defendant agreed to speak with the two agents, they brought defendant to an area adjacent to the escalator. *Kiser*, 113 Ill. App. 3d at 504. The *Kiser* court concluded that, at the moment of the initial encounter, a seizure had occurred and a reasonable suspicion was needed for this investigatory stop. *Kiser*, 113 Ill. App. 3d at 504-05. The agents' suspicions were based only on the fact that the defendant had come from an alleged source city (Fort Lauderdale), was among the first to deplane, dressed casually, looked around cautiously, picked up his pace later on and looked over his shoulder more than once. *Kiser*, 113 Ill. App. 3d at 505. The *Kiser* court found that these "suspicions" did not distinguish the defendant from other travelers nor could such behavior be characterized as bizarre and, thus, the investigatory stop was not justified and the evidence obtained by the agents was inadmissible. *Kiser*, 113 Ill. App. 3d at 506. Accordingly, the appellate court reversed the conviction. *Kiser*, 113 Ill. App. 3d at 506. Unlike *Kiser*, the initial encounter in the present case was consensual, the agents did not move defendant to

another area, and the agents relied on information given to them by the Los Angeles DEA task force. The agents did not simply rely on a "drug courier profile."

■ After carefully reviewing the record, we agree with the trial court's decision that the encounter between Morrison and defendant was consensual and not an investigatory stop. The DEA agents in Chicago received information from the DEA agents in Los Angeles about defendant detailing that she had purchased in cash a one-way ticket at the last minute and was possibly carrying narcotics. The agents observed her from the time she deplaned in Chicago until she exited the airport terminal. While defendant was walking down a public walkway, Morrison, who was unarmed and dressed in plain clothes, identified himself to defendant and asked her if he could speak with her. She said yes. The trial court found that Morrison never touched defendant, even though defendant stated she was grabbed by the arm. This is a credibility issue, which is better left to the discretion of the trial court. It is the function of the trier of fact to weigh evidence, resolve any apparent conflicts therein, and evaluate the credibility of witnesses. *People v. Redd*, 135 Ill. 2d 252, 268 (1990). Therefore, in this matter, we do not believe that defendant was grabbed by the arm or illegally detained.

The conversation took place in a public walkway, with the other agents standing a little farther away. During questioning, Morrison informed defendant more than once that she was free to leave at any time and that she was not under arrest. It is undisputed that she was nervous during this questioning. According to Morrison, defendant initially denied having flown on Southwest Airlines, stating that she flew on ATA. Despite her claim, Morrison saw the Southwest Airline flight folder protruding from defendant's purse and asked to see it. Morrison then asked defendant for some identification, which she did not have. Defendant claimed her name was Keisha Walker. Furthermore, when asked if the suitcase next to defendant belonged to her, she denied ownership at first, only to later state that it was indeed hers. When asked what she was doing in Los Angeles, defendant replied that she was there for two days to attend a funeral. The evidence points to the fact that the conversation between Agent Morrison and defendant was a consensual encounter and not a seizure.

■ Next, defendant maintains that she did not give voluntary consent for the officers to search her luggage. Defendant maintains that the officers created an intimidating atmosphere, because six or seven officers appeared to "surround her." The State, on the other hand, believes it has met its burden of proof on the issue of voluntariness. We agree.

In determining whether consent was voluntarily given, a court must evaluate the totality of the circumstances alleged to comprise consent. *People v. Griffin*, 158 Ill. App. 3d 46, 510 N.E.2d 1311 (1987). Voluntariness is thus a question of fact for the trial court, whose determination will survive review unless clearly unreasonable. *Price*, 195 Ill. App. 3d at 709. The State bears the burden of showing by a preponderance of the evidence that a consent to search was voluntarily given. *People v. Casazza*, 144 Ill. 2d 414, 417, 581 N.E.2d 651 (1991); *People v. Hernandez*, 278 Ill. App. 3d 545, 551, 663 N.E.2d 86 (1996).

The totality of the circumstances leads us to believe that defendant gave her voluntary consent. The record shows that when Morrison asked if he could open defendant's suitcase, she answered "yes, if you must." Morrison replied, "it's not that I must. That's why I am asking your permission to search," to which defendant answered, "go ahead, its ok." Furthermore, defendant was aware that she was not under arrest and was free to leave at any time. There was no physical contact, no display of weapons and no hinderance of her movement. Even though there may have been more than one officer in the near vicinity, we cannot rely on that mere fact and conclude that defendant's consent was involuntary. Moreover, *even if* defendant did not "voluntarily" consent, we find that the agents had a reasonable and articulable suspicion based on defendant's answers, conduct, and explanations, which would have been sufficient to detain her and search her suitcase.

■ In addition, defendant submits that even if the agents legally searched defendant's suitcase, the agents needed a search warrant or probable cause to search the specific contents, *i.e.*, teddy bear, of the suitcase. However, once defendant consented to the search of her suitcase, that consent extended to the search of her teddy bear. See *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983) (once a defendant consents to a search, there is no requirement that officers seek separate permission for items contained within). Thus, we conclude that the seizure of the teddy bear was proper under the circumstances.

■ Finally, defendant maintains that the circumstantial evidence adduced at trial was insufficient to establish her guilt beyond a reasonable doubt. Specifically, defendant argues that the evidence was insufficient to establish her knowledge of the narcotics inside the suitcase. We are not persuaded by defendant's argument.

If at the close of the State's evidence or at the close of all the evidence the evidence is insufficient to support a finding of guilty, the court may, on motion of the defendant, enter a judgment of acquittal

and discharge the defendant. 725 ILCS 5/115—4(k) (West 1994). The applicable standard of review is "whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985). To support a conviction for unlawful possession of narcotics with intent to deliver, the State must establish that defendant had knowledge of the presence of narcotics, that the narcotics were in the immediate control or possession of defendant, and that the amount of narcotics was in excess of any amount that might be viewed as being possessed for personal use. *People v. Embry*, 20 Ill. 2d 331, 334, 169 N.E.2d 767 (1960).

After reviewing all the evidence presented in light most favorable to the prosecution, we find that the State proved defendant guilty of possession of a controlled substance with intent to deliver beyond a reasonable doubt. As such, the trial court properly denied defendant's motion for a judgment of acquittal. Accordingly, we affirm the trial court's decision.

Affirmed.

RAKOWSKI and McNULTY, JJ., concur.