THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN GONZALEZ, Defendant-Appellant.

Second District    No. 2—95—0708

Opinion filed January 13, 1998.

BOWMAN, J., dissenting.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, and Beth Katz, of Wheeling, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

Following a jury trial, the defendant, John Gonzalez, was convicted of unlawful use of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 1994)) and sentenced to nine years' incarceration. On appeal, the defendant argues that (1) the trial court erred in denying his motion to suppress evidence; and (2) the trial court erred in denying his motion to allow the jury to view the area where he was arrested. We affirm.

Prior to trial, the defendant moved to suppress the handgun recovered by the police at the time of his arrest. At the suppression hearing, Officer Kevin Gulley of the Rockford police department testified that, on October 27, 1994, at approximately 2:40 a.m., he was

patrolling the area of West and Cunningham Streets in Rockford. This is a high-crime area in which there are frequent "drug-related" and "shots-fired" calls. On the date in question, he observed a vehicle driven by a white female speed past him. Without the use of a radar gun, he estimated that the vehicle was travelling about 40 miles per hour in a 30-mile-per-hour zone. He did not notice any other passengers in the car. Officer Gulley turned on his emergency lights, shined his spotlight into the car's rearview mirror, and effectuated a traffic stop.

As soon as the vehicle came to a stop at a nearby corner, the defendant exited the rear passenger side of the car and began walking away. Officer Gulley exited his car, and "just for [his] safety," he instructed the defendant to return to the scene. The defendant ignored Officer Gulley's instructions and kept walking. At that time, Officer Gulley, a canine officer, directed his dog to exit the police car. He ordered the dog into the "heel" position. The dog began "barking his head off" at the defendant. Officer Gulley again instructed the defendant to return to the scene. At this time, the defendant stopped, turned around, and hesitated. At that moment, Officer Gulley believed that the defendant was going to run away. However, the defendant began walking back toward the scene. Because of the defendant's "strange behavior," Officer Gulley asked him whether he was carrying any guns, needles, or knives. The defendant responded affirmatively. Officer Gulley then patted down the defendant and found a handgun in his waistband.

On cross-examination, Officer Gulley reiterated that, at the time defendant was walking away, he feared for his personal safety. Officer Gulley testified that the defendant was a "necessary party" to the traffic stop because he did not know who the defendant was and was unsure why the defendant had exited the vehicle so abruptly after the initial stop. Officer Gulley admitted that, at the time he ordered the defendant to turn around and return to the scene, he did not observe anything that indicated that the defendant was committing or had committed a crime. He did not observe anything in the defendant's hands.

Rebecca Sigala testified that, at the time of the stop, she was a passenger in the front seat of a vehicle being driven by Jessie Hogan. Sigala testified that the defendant was riding in the backseat of the vehicle and that Hogan was in the process of driving the defendant home. She never saw police emergency lights before the car stopped in front of the defendant's home. When Hogan pulled the car to the curb, Sigala and Hogan said good-bye to the defendant and he exited the car. After the defendant exited the car, a police car stopped

behind it and a spotlight was shined directly onto the car's rearview mirror. An officer exited from the police car and said to the defendant, "Hey, come here." The defendant "looked up, like surprised like, and he walked back there to talk to the cop." The officer instructed the defendant only one time to return to the scene. The officer did not activate his emergency lights until after he had handcuffed the defendant.

Jessie Hogan testified that she drove the defendant home in her car on October 27, 1994. When she stopped in front of his house, the defendant exited the car and she said, "See you later." Almost immediately thereafter, a police car pulled up behind her; she was able to see the lights on top of the car even though they were not activated at that time. The officer who exited the car told the defendant to "come here," and the defendant complied. She heard a dog barking at some point. The police car's overhead lights were not illuminated until after Officer Gulley called and requested assistance.

At the conclusion of the hearing, the trial court noted that "if an officer effectuates a legal traffic stop for a violation of the law, [then] he has the right to insist the occupants in the car remain in the car, and that's not what the Defendant did." According to the trial court, it was not unconstitutional under the circumstances of the traffic stop for Officer Gulley to ask the defendant whether he was carrying any weapons, and when the defendant responded affirmatively, it was not unconstitutional for Officer Gulley to perform the search. The trial court also determined that Officer Gulley's testimony was more credible than that of Sigala and Hogan. Accordingly, the trial court denied the defendant's motion to suppress.

The trial began on February 22, 1995. The testimony of Officer Gulley, Sigala, and Hogan was substantially similar to that which they had provided at the suppression hearing. The defendant testified on his own behalf and admitted that he had prior convictions of aggravated discharge of a firearm and robbery. The defendant testified that, on the morning of October 27, 1994, Hogan drove him home. As he was saying good-bye and exiting the car, he noticed a police car approach and stop behind Hogan's car. The officer shined his spotlight into Hogan's car. The defendant heard someone say, "hey, you, come here." The defendant turned toward the officer and "went directly back to him." At that time, the police car's overhead lights were not illuminated.

The defendant met Officer Gulley in front of the police car. According to the defendant, Officer Gulley asked for identification and ordered him to put his hands on the hood of the police car. After telling the defendant to sit on the hood of the police car, Officer Gulley

then searched the area around Hogan's car. Officer Gulley recovered a handgun from the leaf-covered curb area near Hogan's car. The defendant denied that the gun was his. Officer Gulley then placed the defendant in handcuffs and radioed for assistance. Officer Gulley did not illuminate his roof lights until after he had handcuffed the defendant. According to the defendant, Officer Gulley never asked him whether he was carrying any guns, needles, or knives.

The defendant's primary contention on appeal is that the trial court erred in denying his motion to suppress. The defendant argues that he was unlawfully detained under the standards articulated in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). According to the defendant, Officer Gulley could not have reasonably believed that he was in danger or that the defendant was armed and dangerous based on the defendant's actions at the scene. Therefore, the defendant concludes that he was illegally stopped and searched and that the recovered handgun should have been suppressed.

■ At the outset, we note that a trial court's decision on a motion to suppress evidence will not be disturbed on review unless that decision is clearly erroneous or against the manifest weight of the evidence. *People v. Drake*, 288 Ill. App. 3d 963, 967 (1997). Our standard of review is such because the trial court is in a superior position to determine and weigh the credibility of the witnesses, to observe their demeanor, and to resolve conflicts in their testimony. *People v. Carter*, 288 Ill. App. 3d 658, 662 (1997). Thus, the trial court's factual determinations, as well as any reasonable inferences drawn therefrom, are entitled to great deference on review. *People v. Perez*, 288 Ill. App. 3d 1037, 1043 (1997).

In this case, the parties initially dispute the facts of the traffic stop itself. While the State argues that Officer Gulley effectuated the stop with his emergency lights illuminated, the defendant points to the testimony of Hogan and Sigala as evidence that Officer Gulley did not activate the emergency lights until after the defendant was arrested. The trial court determined that Officer Gulley's testimony was more credible than that of Hogan and Sigala. We have reviewed the record and conclude that such a determination is neither clearly erroneous nor against the manifest weight of the evidence. See *Drake*, 288 Ill. App. 3d at 967. We will therefore examine the facts of this case by taking Officer Gulley's version of the events as true.

■ Both the United States and the Illinois Constitutions protect citizens from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *People v. Fulton*, 289 Ill. App. 3d 970, 973 (1997). The fundamental purpose of these provisions is "to protect the legitimate expectations of privacy that citizens possess in their

persons, their homes, and their belongings" (*People v. James*, 163 Ill. 2d 302, 311 (1994)), while according " ' "fair leeway for enforcing the law in the community's protection." [Citation.]' " (*People v. James*, 163 Ill. 2d at 311, quoting *Dunaway v. New York*, 442 U.S. 200, 208, 60 L. Ed. 2d 824, 833, 99 S. Ct. 2248, 2254 (1979)). Our supreme court has construed the search and seizure language found in article I, section 6, of the Illinois Constitution in a manner that is consistent with the United States Supreme Court's fourth amendment jurisprudence. *Fink v. Ryan*, 174 Ill. 2d 302, 314 (1996).

Generally, searches and seizures are only reasonable if the government has first obtained a warrant authorizing the action. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 111 L. Ed. 2d 148, 156, 110 S. Ct. 2793, 2797 (1990). A warrantless search or seizure is deemed *per se* unreasonable unless it comes within one of the few specifically established and well-delineated exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 29 L. Ed. 2d 564, 576, 91 S. Ct. 2022, 2032 (1971); *Drake*, 288 Ill. App. 3d at 967. In instances where a police officer has lawfully stopped a motor vehicle pursuant to a traffic stop, however, the officer may, as a matter of course, order the driver and passengers out of the vehicle. See *Maryland v. Wilson*, 519 U.S. 408, 137 L. Ed. 2d 41, 117 S. Ct. 882 (1997).

In *Pennsylvania v. Mimms*, 434 U.S. 106, 107, 54 L. Ed. 2d 331, 334, 98 S. Ct. 330, 331 (1977), the driver of a vehicle was stopped for driving with an expired license plate. When the officer asked the driver to step out of his car, the officer noticed a bulge in his jacket. The bulge proved to be a .38-caliber revolver, and the driver was arrested for carrying a concealed deadly weapon. *Mimms*, 434 U.S. at 107, 54 L. Ed. 2d at 334-35, 98 S. Ct. at 331. The driver urged the suppression of the evidence on the ground that the officer's action of ordering him out of the car was an unreasonable seizure. *Mimms*, 434 U.S. at 107-08, 54 L. Ed. 2d at 335, 98 S. Ct. at 331-32.

In finding that there was no improper search, the United States Supreme Court held that an officer may order a driver to get out of his vehicle as a precautionary measure in order to protect the officer's own personal safety. *Mimms*, 434 U.S. at 109-11, 54 L. Ed. 2d at 336-37, 98 S. Ct. at 332-33. The Court held that such a "legitimate and weighty" justification outweighed the intrusion into the driver's liberty interest. *Mimms*, 434 U.S. at 109-11, 54 L. Ed. 2d at 336-37, 98 S. Ct. at 332-33. In instances where the driver has already been validly stopped for a traffic infraction, the Court described the additional intrusion of asking him to step outside his car as *de minimus*. *Mimms*, 434 U.S. at 111, 54 L. Ed. 2d at 337, 98 S. Ct. at 333.

In *Maryland v. Wilson*, 519 U.S. 408, 137 L. Ed. 2d 41, 117 S. Ct.

882 (1997), the United States Supreme Court extended the law enunciated in *Mimms* to the passengers of a legally stopped vehicle. In that case, the officer stopped a vehicle for speeding and for failure to display a license tag. The officer observed that the front-seat passenger of the car appeared extremely nervous, and the officer ordered him out of the car. As the passenger exited the car, a quantity of cocaine fell to the ground and he was arrested. *Wilson*, 519 U.S. at 411, 137 L. Ed. 2d at 45, 117 S. Ct. at 884. The passenger sought to have the evidence suppressed on the ground that the officer's ordering him out of the car was an unreasonable seizure. *Wilson*, 519 U.S. at 411-12, 137 L. Ed. 2d at 45-46, 117 S. Ct. at 884.

After a consideration of its analysis in *Mimms*, the Court held that an officer may order passengers out of the vehicle during a legal traffic stop. *Wilson*, 519 U.S. at 414, 137 L. Ed. 2d at 48, 117 S. Ct. at 886. The Court summarized its rationale as follows:

> "[The] danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Wilson*, 519 U.S. at 414-15, 137 L. Ed. 2d at 48, 117 S. Ct. at 886.

The Court therefore concluded that there had been no fourth amendment violation by the officer's conduct. *Wilson*, 519 U.S. at 414, 137 L. Ed. 2d at 48, 117 S. Ct. at 886.

■ The issue presented in the instant case extends this line of inquiry one step further. The question that we must resolve is whether an officer may forcibly require the defendant to remain at the scene during the duration of the stop. This issue was raised by the parties in *Wilson*, but the Court declined to express any opinion upon it. *Wilson*, 519 U.S. at 415 n.3, 137 L. Ed. 2d at 48 n.3, 117 S. Ct. at 886 n.3.

As with all fourth amendment issues, in order to decide this question we are required to balance the public interest gained by the detention of the individual against the individual's right to be free from arbitrary interference from law officers. See *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 614-15, 95 S. Ct. 2574, 2579 (1975). On the public interest side of the balance, the same weighty interest in officer safety is present. See *Mimms*, 434 U.S. at 109-11, 54 L. Ed. 2d at 336-37, 98 S. Ct. at 332-34. It would be illogical to grant an officer the right to order a passenger out of the vehicle, but not to allow the officer to have control over the pas-

senger's movement during the duration of the traffic stop. If an officer is not permitted to detain the passenger, then the passenger could leave the scene and ambush the officer during the remainder of the stop. This interest in officer safety presents a compelling justification to permit the officer to have control over the movement of all occupants of a legally stopped vehicle. See *Mimms*, 434 U.S. at 109-11, 54 L. Ed. 2d at 336-37, 98 S. Ct. at 332-34.

On the personal liberty side of the balance, the passenger of a stopped vehicle has a strong interest in being free from arbitrary interference from police officers. See *Wilson*, 519 U.S. at 412, 137 L. Ed. 2d at 47, 117 S. Ct. at 886. While there is probable cause to believe that the driver of the vehicle has committed a traffic offense in such instances, there is no similar reason to stop the passenger of the vehicle. As a practical matter, however, a passenger is necessarily stopped as a result of the traffic stop. *Wilson*, 519 U.S. at 412, 137 L. Ed. 2d at 47, 117 S. Ct. at 886. In light of the fact that the passenger has already been stopped, we do not believe that requiring him to remain at the scene causes a significant additional deprivation of personal liberty. Indeed, aside from the unique circumstances of this particular case, a passenger often will have no other option but to wait for the completion of the traffic stop.

In view of these factors, we conclude that the public interest in officer safety outweighs the potential intrusion to the passenger's liberty interests. As noted in *Wilson*, traffic stops are often dangerous encounters. *Wilson*, 519 U.S. at 412, 137 L. Ed. 2d at 47, 117 S. Ct. at 885. Violence often erupts when a driver or passenger is fearful that evidence of a more serious crime may be discovered during the stop. *Wilson*, 519 U.S. at 412-13, 137 L. Ed. 2d at 47-48, 117 S. Ct. at 886. In order to best protect himself, a police officer must be afforded the opportunity to control the scene. An officer's personal safety may be threatened when the occupants of the stopped vehicle are permitted to wander about the scene. We therefore hold that, in instances where an officer fears for his personal safety, he may forcefully detain the passenger of a vehicle that has been lawfully stopped.

█ Applying these principles to the instant case, we conclude that it was permissible for Officer Gulley, with the aid of his police dog, to order the defendant to return to the scene. As noted above, the traffic stop was conducted in a high-crime area. Officer Gulley testified that the defendant exited the vehicle abruptly and that he was unsure of what the defendant was going to do. As Officer Gulley did not know who the defendant was or who else was in the vehicle, Officer Gulley believed that his personal safety required that the defendant return to the car. It was only after the defendant ignored this first command

that Officer Gulley brought out the police dog. In view of these circumstances and the potential threat to Officer Gulley's personal safety, it was appropriate for Gulley to forcefully detain the defendant at the scene.

For these same reasons, we do not find that it was improper for Officer Gulley to ask the defendant whether he was carrying any guns, needles, or knives. In *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) (codified at 725 ILCS 5/108—1.01 (West 1994)), the United States Supreme Court held that the fourth amendment does not prevent a police officer from taking those measures necessary to determine whether a suspect is armed and poses a potential danger. The Court explained:

> "[W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry*, 392 U.S. at 24, 20 L. Ed. 2d at 907-08, 88 S. Ct. at 1881.

In such instances, the officer may subject the person to a limited search for weapons, commonly referred to as a "frisk." *People v. Flowers*, 179 Ill. 2d 257, 262 (1997). An officer need not be absolutely certain that the individual is armed. *People v. Ware*, 264 Ill. App. 3d 650, 655 (1994). The issue is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883; *People v. Galvin*, 127 Ill. 2d 153, 165 (1989). Additionally, we note that, in instances where the immediate physical safety of an officer is at stake, the officer may inquire as to the presence of weapons without first advising the individual of his *Miranda* rights. See *United States v. Castellana*, 500 F.2d 325, 326-27 (5th Cir. 1974); *State v. Lane*, 77 Wash. 2d 860, 863, 467 P.2d 304, 306 (1970); 1 W. LaFave & J. Israel, Criminal Procedure § 6.7(b), at 506-08 (1984).

Contrary to the defendant's contentions, we believe that the circumstances of the instant case were sufficient to create a reasonable suspicion that the defendant was armed and a threat to Officer Gulley's personal safety. As noted above, the defendant ignored Gulley's first command to return to the scene. After Officer Gulley brought his dog out of the squad car and again ordered the defendant to

return, the defendant turned, looked at him, and hesitated. Although the defendant eventually returned to the scene, Officer Gulley considered this behavior strange and he feared for his own safety. Such circumstances were sufficient under *Terry* to permit Officer Gulley to inquire whether the defendant was armed and to pat down the defendant upon his affirmative response. *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883. These actions were necessary to protect Officer Gulley's personal safety and to allow him to gain control over the scene. For these reasons, we find that there was no improper search and seizure and conclude that the trial court properly denied the defendant's motion to suppress.

■ The defendant's second contention on appeal is that the trial court erred in denying his request to permit the jury to view the area in which he was arrested. At trial, the defendant maintained that, due to the topography in the area, it would have been impossible for Officer Gulley to view Hogan's passing car at the intersection of West and Cunningham Streets. The defendant argued that permitting the jury to view the area would have been important in determining the credibility of Officer Gulley's testimony. The trial court denied the motion on the ground that a photograph would sufficiently portray the scene to the jury.

As the defendant concedes, it is well settled that the decision to allow jurors to personally view a crime scene lies within the sound discretion of the trial court. *People v. Durso*, 40 Ill. 2d 242, 251 (1968). Where no useful purpose would be served by such a viewing, it is not an abuse of discretion to deny such a request. *People v. Jarosiewicz*, 55 Ill. App. 3d 1057, 1062 (1977). Photographs are often adequate to portray the scene for the jury. *Munjal v. Baird & Warner, Inc.*, 138 Ill. App. 3d 172, 185 (1985).

We agree with the trial court that a photograph or videotape could have adequately portrayed the scene in question. Although the trial court permitted the defendant the opportunity to introduce such a picture at trial, he failed to do so. As the defendant has never produced any pictures of the scene, we are unable to assess the defendant's contention that such a photograph would have been insufficient. Accordingly, we conclude that the trial court did not abuse its discretion in denying the defendant's motion. See *Durso*, 40 Ill. 2d at 251-52.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

THOMAS, J., concurs.

JUSTICE BOWMAN, dissenting:

The majority concludes that it is constitutionally permissible for a police officer to force a passenger in an automobile stopped for a minor traffic violation to return to the scene of the stop after that individual has exercised his right to walk away. According to the majority, such police action is appropriate "in instances where an officer fears for his personal safety." 294 Ill. App. 3d at 212. Under this rationale, a police officer is now empowered to detain innocent passengers in situations where there is not a scintilla of objectively reasonable evidence that the officer faces any potential risk of harm. I simply cannot agree to this far-reaching expansion of police power at the expense of individual liberty. I therefore respectfully dissent.

In *Pennsylvania v. Mimms*, 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977), the Supreme Court held that a police officer may order the driver of a lawfully stopped car to exit the car as a precautionary measure for the officer's safety. *Mimms*, 434 U.S. at 109-11, 54 L. Ed. 2d at 336-37, 98 S. Ct. at 332-33. More recently, in *Maryland v. Wilson*, 519 U.S. 408, 137 L. Ed. 2d 41, 117 S. Ct. 882 (1997), the Court held that the *Mimms* rule applies to passengers as well as drivers. *Wilson*, 519 U.S. at 412-13, 137 L. Ed. 2d at 47-48, 117 S. Ct. at 885-86. Thus, a police officer may now order a passenger to exit a car pending the completion of a traffic stop. *Wilson*, 519 U.S. at 413, 137 L. Ed. 2d at 48, 117 S. Ct. at 886. In both cases, the underpinning of the Court's conclusion was that, once a car was lawfully stopped by police, any additional intrusion on an individual's liberty is *de minimis* and is outweighed by consideration of the officer's safety at the scene of the traffic stop. *Wilson*, 519 U.S. at 413, 137 L. Ed. 2d at 48, 117 S. Ct. at 886; *Mimms*, 434 U.S. at 111, 54 L. Ed. 2d at 337, 98 S. Ct. at 333.

In light of these two Supreme Court decisions, the majority concludes that it would be "illogical to grant an officer the right to order a passenger out of the vehicle, but not to allow the officer to have control over the passenger's movement during the duration of the traffic stop." 294 Ill. App. 3d at 211-12. The critical flaw in the majority's argument, however, is that it is framed in the context of a *Mimms/Wilson* stop, where asking a driver or passenger to exit an

already stopped car is merely a *de minimis* intrusion on that person's freedom. In other words, the majority's rule contemplates the situation where a police officer orders a passenger to exit a car and, during the course of the traffic stop, the passenger attempts to flee the scene, makes a furtive movement, or somehow threatens the officer's safety. I have no doubt that in such a situation a police officer would have an "articulable suspicion of possible danger" which would justify detaining the passenger pursuant to *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). See *Wilson*, 519 U.S. at 416-17, 137 L. Ed. 2d at 49-50, 117 S. Ct. at 887 (Stevens, J., dissenting, joined by Kennedy, J.). We are not faced with such a case here, nor was the Court in *Wilson*. Rather, our case involves an individual who exited the car of his own volition and was proceeding away from the scene at the time of Officer Gulley's commands to return. It does not follow that any intrusion on this person's freedom is *de minimis*.

Importantly, defendant was walking away from the scene and posed no threat to Officer Gulley's safety. Nothing in the record indicates that defendant threatened Officer Gulley in any way. In fact, Officer Gulley himself testified that he did not observe anything suspicious in defendant's hands or anything that indicated that defendant had committed or was committing a crime. Of course, it is true that Officer Gulley stated that he asked defendant to return to the scene "just for [his] safety." Such a self-serving and highly subjective remark, without any supporting evidence, is simply insufficient to justify a restriction on individual freedom. The majority argues that "the passenger could leave the scene and ambush the officer during the remainder of the stop." 294 Ill. App. 3d at 212. Such thinking is speculative at best, paranoid at worst. The vast number of traffic stops in this country do not involve violence of any type. See *Wilson*, 519 U.S. at 416-22, 137 L. Ed. 2d at 49-52, 117 S. Ct. at 887-89 (Stevens, J., dissenting, joined by Kennedy, J.). Of those that do end violently, most violence almost certainly occurs during the initial encounter between the officer and the driver and any passengers; in other words, I envision that few, if any, violent traffic stops involve situations where someone leaves the scene only to return later to "ambush" the officer.

Moreover, because our case lacks any evidence of potential harm to the officer but still condones the restriction of individual liberty under the guise of officer safety, the rule announced by the majority will affect hundreds of innocent passengers stopped daily in this state. A police officer need not articulate anything more than a baseless concern for his safety in order to command a citizen who is exercising his constitutional right to walk away to return to the

scene. As Justice Stevens noted in *Wilson*, "Most traffic stops involve otherwise law-abiding citizens \*\*\*." *Wilson*, 519 U.S. at 417-18, 137 L. Ed. 2d at 50, 117 S. Ct. at 888 (Stevens, J., dissenting, joined by Kennedy, J.). I know of no crime defendant was committing at the time he chose to walk away from the scene of the stop in this case. Neither Officer Gulley nor the majority can point to any criminal activity by defendant. Neither Officer Gulley nor the majority can articulate any facts that demonstrate a potential threat to the officer's safety at the scene. Therefore, I cannot agree that Officer Gulley's actions amount to a *de minimis* intrusion on defendant's freedom. I believe that ordering an individual to return to the scene, in the presence of a barking police dog, after he has already exercised his right to walk away is far more than the *de minimis* intrusion the *Mimms* and *Wilson* Courts discussed. An individual in defendant's position has the constitutional right to be free from arbitrary police interference and unreasonable searches and seizures. The trial court erred in denying defendant's motion to suppress. Accordingly, I would reverse his conviction.

Finally, I briefly note my disagreement with the majority's *Miranda* analysis, an issue that was not raised by the parties. In order to justify Officer Gulley's questioning of defendant, the majority submits that "in instances where the *immediate physical safety* of an officer is at stake, the officer may inquire [of a seized person] as to the presence of weapons without first advising the individual of his *Miranda* rights." (Emphasis added.) 294 Ill. App. 3d at 213. Assuming that I agreed with this proposition, for which the majority cites no Illinois authority, I could not apply it in this case. There is simply no evidence to support Officer Gulley's statement regarding concerns for his safety; there is nothing in the record from which a court could conclude that his "immediate physical safety" was threatened and he was therefore justified in questioning defendant absent a *Miranda* warning. Therefore, I believe that the majority also erroneously concludes that Officer Gulley conducted a valid search and seizure.

In sum, I believe that the majority's decision to increase police power at the expense of constitutional rights necessarily increases the possibility that such power will be abused. The majority's conclusion certainly denigrates the time-honored tradition that the fourth amendment is meant to protect against unreasonable searches and seizures. In my opinion, the search and seizure of defendant in this case was unreasonable because it was not based on anything other than a police officer's subjective and unfounded safety concern. I therefore dissent.